787 N.E.2d 747 (2003)
204 Ill.2d 50
272 Ill.Dec. 561
In re J.W., a Minor (The People of the State of Illinois, Appellee,
v.
J.W., Appellant).
No. 92116.
Supreme Court of Illinois.
February 21, 2003.
Rehearing Denied March 31, 2003.
*750 Josette Skelnik, Elgin, for appellant.
James E. Ryan, Attorney General, Springfield, Meg Gorecki, State's Attorney, St. Charles (Joel D. Bertocchi, Solicitor General, William L. Browers, Anne S. Bagby, Assistant Attorneys General, Chicago, of counsel), for the People.
Herschella Conyers, Chicago, for amicus curiae Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School.
Steven A. Drizin, Chicago, Colleen M. Ryan, law student, for amicus curiae Bluhm Legal Clinic of Northwestern University School of Law.
Justice THOMAS delivered the opinion of the court:
Respondent, J.W., a 12-year-old boy, was adjudicated delinquent following his admission to two counts of aggravated criminal sexual assault (720 ILCS 5/12-14(b)(i) (West 1998)), and was sentenced to a term of five years' probation. Among the conditions of his probation, J.W. was ordered to register as a sex offender. In addition, J.W. was prohibited from residing in or going to the Village of South Elgin, Illinois, the community where J.W. lived and where the aggravated criminal sexual assaults took place.
J.W. appealed two of the conditions of his probation contending that: (1) requiring *751 a 12-year-old child to register as a sex offender is unconstitutional; and (2) prohibiting J.W. from residing in or visiting South Elgin as a condition of probation is overly broad and void. The appellate court affirmed the trial court's order. Nos. 2-00-0360, 2-00-0432 cons, (unpublished order under Supreme Court Rule 23). This court granted J.W.'s petition for leave to appeal (177 Ill.2d R. 315). We also granted the motion of the Bluhm Legal Clinic of Northwestern University Law School and the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School for leave to file a brief as amicus curiae.

BACKGROUND
The State filed its petition for adjudication on November 10, 1999, alleging that J.W. had committed aggravated criminal sexual assaults against two seven-year-old boys, R.We. and J.P. On February 14, 2000, J.W. pled guilty to two counts of aggravated criminal sexual assault in exchange for the State's agreement to withdraw two other counts of aggravated criminal sexual assault. There was no agreement among the parties as to sentencing. Consequently, a sentencing hearing was held in February 2000.
At J.W.'s sentencing hearing, Dr. Kevin Breen, a psychiatrist, testified that he met with J.W. and his parents one time in December 1999, for approximately one hour, to determine whether J.W. was a danger to anyone else. Dr. Breen's report of this examination was entered into evidence. The report indicated that J.W. had admitted to five episodes where he convinced R.We. and J.P. to have oral-genital contact with one another and with him. J.W. denied that the boys were physically coerced, but admitted he used verbal coercion. J.W.'s parents revealed to Dr. Breen that J.W. also had exposed himself on one occasion to a five-year-old boy. J.W. denied having been physically, sexually or emotionally abused, but admitted that he had seen his father's sexually explicit magazines.
Dr. Breen concluded in his report that J.W. was minimizing his sexual encounters with young boys, noting that J.W. had not mentioned the incident with the five-year-old boy. According to the report, Dr. Breen's diagnosis of J.W. was paraphilia, not otherwise specified. Paraphilia is where a person engages in sexual activity or sexual acts that are not sanctioned by society. The diagnosis would have been pedophilia with a sexual attraction to males, except that J.W. was not 16 years old, as required by the standard criteria.
Dr. Breen testified at J.W.'s sentencing hearing that he was not aware of any incidents of anal sex or anal penetration between J.W. and his victims, nor was he aware of allegations that J.W. had introduced a dog into his sexual acts. Dr. Breen's recommendations for the treatment of J.W. included medication, cognitive behavioral therapy, and residential treatment. Dr. Breen recommended residential treatment given the frequency of relapse among individuals with sexual disorders. Dr. Breen testified that, given the frequency of relapse, J.W. would present a risk to the community if he was not placed in residential treatment.
David Berg, an investigator with the Child Advocacy Center of the Kane County State's Attorney's office, testified at the sentencing hearing that he investigated the case concerning J.W. Berg became involved in the case after the family of R.We. made a police report alleging that J.W. had put his mouth on R.We.'s penis and had R.We. put his mouth on J.W.'s penis. These incidents took place under the deck of a neighbor's house and in J.W.'s home. R.We. said the sexual contact occurred between 5 and 10 times. R.We. did not tell anyone about the incidents *752 because he feared retribution from J.W.
Berg also interviewed the other victim, J.P. J.P. told Berg that J.W. had put his mouth on J.P.'s penis and that J.W. had put his penis in J.P.'s mouth. J.W. also touched the penises of both victims.
In addition to the two victims, a five-year-old boy saw J.W. expose himself, and R.We.'s six-year-old sister witnessed an incident of oral sex between J.W. and R.We.
Berg initially spoke with J.P.'s stepmother on November 5, 1999. In a follow-up conversation several days later, J.P.'s stepmother told Berg that J.P. had forgotten to tell him something, and indicated that J.W. had placed his penis in J.P.'s anus. Subsequently, both J.P. and R.We. told Berg there were several occasions where J.W. placed his penis in their anuses. J.P. told Berg that he did not tell anyone about these incidents because J.W. told him not to tell.
Berg testified that approximately one week prior to the sentencing hearing, he again met with R.We., who told Berg that J.W. had his dog lick the penises of both boys. J.W. also told the two victims to try to penetrate the dog's anus with their penises, but they were unable to do so. The boys did observe J.W. penetrate the dog's anus. The incidents with the dog took place in J.W.'s home. In addition, both boys related that J.W. had directed them to penetrate one another, but they were unable to do so. These events took place under the deck of the neighbor's home and at J.W.'s home.
Therese Wrona, a therapist, testified that she had been involved in the treatment of sexually abusive juveniles for 10 years. Wrona first saw J.W. on December 7, 1999, and in January 2000 began seeing him at least once a week. Wrona testified that J.W. was a danger to the community "to a certain degree." Wrona recommended probation for J.W., stating that "the longer the legal system hangs on to individuals such as [J.W.], the better." In addition, Wrona recommended a course of treatment specialized for individuals that have problems with sexual aggression. Wrona also stated that J.W. required 24-hour monitoring and supervision by a person that understood the nature and seriousness of J.W.'s problem. J.W.'s school should be informed concerning J.W.'s history of sexually aggressive behavior so that the school could monitor J.W. and protect other students. Wrona further said that J.W. should not be around younger children, or even children his own age, unless an adult who is aware of J.W.'s problems is present. Wrona's opinion was that J.W. should be allowed to remain in the community and should not be placed in residential treatment. With regard to the protection of the community, Wrona believed that J.W. could return to his home in South Elgin, although given the publicity concerning the case, Wrona believed it might not be in J.W.'s best interest to return to his home.
Wrona testified that J.W. "groomed" his victims, meaning that he approached the victims to assess his likelihood of committing the sexual abuse. J.W. sought out his victims and selected his victims based upon their youth and their trust in him. Wrona said that J.W. initially did not feel any guilt, but she believed J.W. was beginning to appreciate the seriousness of his acts.
J.W.'s parents testified at the sentencing hearing and indicated their willingness to engage in intensive supervision and monitoring of J.W. if he was allowed to return home. J.W.'s parents also indicated that if J.W. was allowed to return home, they intended to sell their home in South Elgin and move to a different neighborhood.
*753 J.W.'s aunt testified on behalf of J.W. that she resides with her husband in Elgin, Illinois. She stated that she and her husband were willing to let J.W. live with them and would take responsibility for his supervision.
At the conclusion of the sentencing hearing, J.W. made a statement on his own behalf apologizing to the victims. The trial court then noted that, because J.W. was under the age of 13, he could not be committed to the juvenile division of the Department of Corrections. See 705 ILCS 405/5-750(3) (West 2000). The trial court also noted that, even though the State had recommended residential treatment for J.W., the State had not determined whether there was a treatment center willing and/or able to take J.W. Accordingly, the trial court placed J.W. on five years' probation and directed the probation officer to determine whether placement was available for J.W. J.W. was to be placed in residential treatment if such placement was available. If placement was not available, J.W. was prohibited from going back to South Elgin and was ordered to reside with his aunt, until his parents moved out of South Elgin. J.W. also was ordered to register as a sex offender and to comply with AIDS/HIV testing pursuant to section 5-710 of the Juvenile Court Act of 1987 (705 ILCS 405/5-710 (West 2000)).
On March 1, 2000, the parties returned to court and informed the trial court that residential treatment had been found for J.W. Accordingly, an order was entered placing J.W. at the treatment center. Thereafter, in anticipation of J.W.'s imminent release from the treatment center, the trial court entered an order on August 22, 2000, providing that J.W. was to reside with his aunt upon release, and would be allowed to reside with his parents once they moved out of South Elgin.
J.W. then appealed the conditions of his probation requiring him to register as a sex offender and prohibiting him from entering or residing in South Elgin. The appellate court stated that J.W. was required to register as a sex offender for the rest of his natural life because he was considered a sexual predator under the Sex Offender Registration Act (Registration Act) (730 ILCS 150/1 et seq. (West 2000)). The appellate court then rejected J.W.'s claim that imposing a lifetime registration requirement on a 12-year-old offender violates substantive due process. The appellate court also held that the trial court did not abuse its discretion when it prohibited J.W. from entering or residing in South Elgin, noting that J.W.'s parents had concurred in the restriction. In this court, J.W. again challenges the conditions of his probation requiring him to register as a sex offender and banishing him from the Village of South Elgin.

ISSUES
As a preliminary matter, we must address the State's claim that this court does not have jurisdiction over this appeal because J.W. did not comply with Supreme Court Rule 604(d) (188 Ill.2d R. 604(d)). Supreme Court Rule 604(d) (188 Ill.2d R. 604(d)), provides, in pertinent part:
"No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment." 188 Ill.2d R. 604(d).
Recently, this court held that Rule 604(d) applies to juvenile proceedings. In re A.G., 195 Ill.2d 313, 253 Ill.Dec. 911, 746 N.E.2d 732 (2001). This court left open, however, the issue of whether a juvenile's failure to file a post-admission motion pursuant *754 to Rule 604(d) serves as a jurisdictional bar to an appeal. A.G., 195 Ill.2d at 322, 253 Ill.Dec. 911, 746 N.E.2d 732. The State contends that this question must be answered in the affirmative, maintaining that, if Rule 604(d) applies to juvenile proceedings, its jurisdictional component also must apply to juvenile proceedings.
With regard to this case, the State notes that J.W. entered admissions to the two counts of aggravated sexual abuse for which he was adjudicated delinquent, and that an admission in juvenile court is the equivalent of a guilty plea. See In re A.G., 195 Ill.2d 313, 316, 253 Ill.Dec. 911, 746 N.E.2d 732 (2001). J.W., however, did not file a motion to withdraw his admissions or to reconsider his sentence prior to filing his appeal. Because J.W. did not comply with Rule 604(d) prior to filing his appeal, the State contends that this court has no jurisdiction over J.W.'s appeal.
In response, J.W. states that, even if the filing of a motion pursuant to Rule 604(d) is a prerequisite to taking a delinquency appeal, Rule 604(d) does not bar his appeal because he is not seeking to challenge his plea or to reconsider his term of probation. Rather, he is contesting the constitutionality of two of the conditions of probation imposed by the trial court, namely, the condition that he register as a sex offender for the rest of his life and the condition barring him from entering the Village of South Elgin. J.W. claims that because these conditions are unconstitutional, they are void. J.W. maintains that a void sentence may be attacked at any time, even following a guilty plea and in the absence of a motion to vacate that plea.
We need not decide here the issue left open in In re A.G. We agree with J.W. that his challenge is to the constitutionality of two of the conditions of his probation, not to the imposition of probation itself. J.W. is not challenging his plea or his sentence of probation. Consequently, Rule 604(d) does not bar J.W.'s appeal.
The State then argues that, even if this court has jurisdiction over this appeal, J.W. has waived any challenge to the conditions of probation because he did not raise these issues in the trial court. J.W., however, maintains that a constitutional challenge to a statute may be made at any time.
J.W. is correct that, in general, a constitutional challenge to a criminal statute can be raised at any time. People v. Bryant, 128 Ill.2d 448, 454, 132 Ill.Dec. 415, 539 N.E.2d 1221 (1989). Accordingly, J.W. has not waived his constitutional challenges to the Registration Act even though he first raised those challenges in the appellate court.
J.W. first argues that the trial court's order requiring him to register as a sex offender for the rest of his natural life violates substantive due process and the proscription against double jeopardy, and constitutes cruel and unusual punishment in violation of the eighth amendment to the United States Constitution (U.S.Const., amend. VIII).
It is well settled that statutes are presumed constitutional and that a party challenging the constitutionality of a statute has the burden of establishing its invalidity. People v. Wright, 194 Ill.2d 1, 24, 251 Ill.Dec. 469, 740 N.E.2d 755 (2000). This court reviews de novo the constitutionality of a statute. People v. Malchow, 193 Ill.2d 413, 418, 250 Ill.Dec. 670, 739 N.E.2d 433 (2000).
At the outset, we must address the appellate court's finding that J.W. shall register as a sex offender for the rest of his natural life. In ordering J.W. to register as a sex offender, the trial court did not specify the duration of registration. The appellate court found that, given the nature *755 of the charges for which J.W. was adjudicated delinquent, J.W. is a "sexual predator" as defined by the Registration Act, so that the duration of registration is for the rest of J.W.'s natural life.
In construing a statute, this court must ascertain and give effect to the legislature's intent in enacting that statute. Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund, 155 Ill.2d 103, 110, 183 Ill.Dec. 6, 610 N.E.2d 1250 (1993). To determine the intention of the legislature, we first examine the language of the statute, which is the most reliable indicator of the legislature's intent. In re C.W., 199 Ill.2d 198, 211, 262 Ill.Dec. 802, 766 N.E.2d 1105 (2002). Where the statutory language is clear and unambiguous, a court must give effect to the statute as written without reading into the statute exceptions, limitations or conditions that the legislature did not express. In re C.W., 199 Ill.2d at 211-12, 262 Ill.Dec. 802, 766 N.E.2d 1105. In addition, a statute must be read as a whole, and no word or paragraph should be interpreted so as to be rendered meaningless. Collins, 155 Ill.2d at 111, 183 Ill.Dec. 6, 610 N.E.2d 1250.
With the foregoing principles in mind, we must examine the definitions of "sexual predator" and "juvenile sex offender" as set forth in the Registration Act. Section 2 contains the definitions for purposes of that Act. Section 2(A) defines a "sex offender." 730 ILCS 150/2(A) (West 2000). Effective July 1, 1999, the Registration Act was amended to add, inter alia, the definition of a "juvenile sex offender." Section 2(A-5) of the Registration Act now provides that:
"`Juvenile sex offender' means any person who is adjudicated a juvenile delinquent as the result of the commission of or attempt to commit a violation set forth in item (B), (C), or (C-5) of this Section or a violation of any substantially similar federal, sister state, or foreign country law. For purposes of this Section, `convicted' shall have the same meaning as `adjudicated.'" 730 ILCS 150/2 (A-5) (West 2000).
J.W. falls within the definition of a juvenile sex offender because he was adjudicated delinquent as the result of the commission of a violation of item (B) of section 2, namely, aggravated criminal sexual assault. See 730 ILCS 150/2(B)(1) (West 2000).[1]
Also included within the definitions in section 2 is the more specific category of sexual predators. A "sexual predator" includes:
"any person who, after the effective date of this amendatory Act of the 91st General Assembly is:
(1) Convicted of a violation of any of the following Sections of the Criminal Code of 1961 and the conviction occurred after the effective date of this amendatory Act of the 91st General Assembly:
* * *
12-14 (aggravated criminal sexual assault)[.]" 730 ILCS 150/2(E)(1) (West 2000).
Reading section 2(A-5) together with section 2(E) so that no word or paragraph is rendered meaningless, we conclude that J.W. clearly qualifies as a sexual predator under the Registration Act. Section 2(A-5) *756 provides that "convicted" has the same meaning as "adjudicated," for purposes of section 2. Section 2 defines a sexual predator as a person who has been "convicted" of aggravated criminal sexual assault. This statutory language is clear and unambiguous, so we give effect to the statute as written. J.W. has been adjudicated delinquent, or "convicted," as the result of the commission of aggravated criminal sexual assault. J.W. therefore falls within the definition of a sexual predator.
Section 3 of the Registration Act provides that sex offenders and sexual predators have a duty to register as required by the Department of State Police. 730 ILCS 150/3 (West 2000). With regard to the duration of registration, section 7 of the Registration Act provides, in pertinent part:
"A sexually violent person or sexual predator shall register for the period of his or her natural life after conviction or adjudication if not confined to a penal institution, hospital, or other institution or facility, and if confined, for the period of his or her natural life after parole, discharge, or release from any such facility. Any other person who is required to register under this Article shall be required to register for a period of 10 years after conviction or adjudication * * *." 730 ILCS 150/7 (West 2000).
Generally, then, a juvenile sex offender would fall within the portion of section 7 that requires registration for a period of 10 years after adjudication. However, with regard to juvenile sex offenders who also are considered sexual predators, the duration of registration is for natural life. Consequently, we find that the appellate court correctly determined that J.W. is a sexual predator so that the duration of J.W.'s registration is for the rest of his natural life.
In so holding, we note that J.W. has submitted as additional authority a recent decision of the appellate court finding that juvenile sex offenders are not required to register under the Registration Act. In re Nicholas K., 326 Ill.App.3d 497, 500, 260 Ill.Dec. 508, 761 N.E.2d 352 (2001). The Nicholas K. court based its finding on the fact that section 3 of the Registration Act, concerning the duty to register, does not specifically refer to juvenile sex offenders. Nicholas K., 326 Ill.App.3d at 500, 260 Ill.Dec. 508, 761 N.E.2d 352.
The additional authority submitted by J.W. does not change our holding in this case. Although section 3 of the Registration Act does not specifically refer to juvenile sex offenders, section 3 does provide that sex offenders and sexual predators shall register. 730 ILCS 150/3 (West 2000). Without addressing whether J.W. would be required to register in any event because he is a sexual predator, we note that a juvenile sex offender is a sex offender, albeit a specific category of sex offender. Juvenile sex offenders therefore are included within the larger category of sex offenders required to register.[2]
This conclusion is supported by the legislative debates concerning House Bill 2721, which added the definition of juvenile sex offender to the Registration Act. Specifically, Representative Klingler explained *757 to the House of Representatives that the bill "requires juveniles who are adjudicated delinquent to register." 91st Ill. Gen. Assem., House Proceedings, March 10, 1999, at 143 (statements of Representative Klingler). Likewise, Senator Klem explained to the Senate that the bill by adding the definition of juvenile sex offender as well as other definitions "imposes registration requirements of those persons." 91st Ill. Gen. Assem., Senate Proceedings, April 26, 1999, at 52 (statements of Senator Klem).
The conclusion that juvenile sex offenders are required to register is further supported by examining the Registration Act in conjunction with the corresponding Sex Offender and Child Murderer Community Notification Law (Notification Law) (730 ILCS 152/101 et seq. (West 2000)). The Notification Law provides that the Department of State Police is to establish and maintain a sex offender database of those persons registered as sex offenders under the Registration Act. 730 ILCS 152/115 (West 2000). The Notification Law expressly includes juvenile sex offenders. See 730 ILCS 152/105, 120(e) (West 2000).
Clearly, then, juvenile sex offenders do fall within the purview of section 3 of the Registration Act and are required to register. Accordingly, the appellate court properly concluded that J.W. is required to register as a sex offender for the rest of his natural life.
We next address J.W.'s claim that an order requiring him to register as a sexual offender for the rest of his natural life violates substantive due process. When confronted with a claim that a statute violates the due process guarantees of the United States and Illinois Constitutions, courts first must determine the nature of the right purportedly infringed upon by the statute. In re R.C., 195 Ill.2d 291, 302, 253 Ill.Dec. 699, 745 N.E.2d 1233 (2001). Where the statute does not affect a fundamental constitutional right, the test for determining whether the statute complies with substantive due process is the rational basis test. People v. Wright, 194 Ill.2d 1, 24, 251 Ill.Dec. 469, 740 N.E.2d 755 (2000). To satisfy this test, a statute need only bear a rational relationship to the purpose the legislature sought to accomplish in enacting the statute. People v. R.G., 131 Ill.2d 328, 342, 137 Ill.Dec. 588, 546 N.E.2d 533 (1989). Pursuant to this test, a statute will be upheld if it "bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective." People v. Adams, 144 Ill.2d 381, 390, 163 Ill.Dec. 483, 581 N.E.2d 637 (1991).
J.W. does not argue, nor do we find, that the statute at issue affects a fundamental right. Accordingly, we analyze the statute at issue using the rational basis test. In People v. Adams, we noted that an earlier version of the Registration Act was passed "in response to concern over the proliferation of sex offenses against children" and was designed to aid law enforcement agencies by requiring sex offenders to register with local law enforcement authorities. Adams, 144 Ill.2d at 386, 163 Ill.Dec. 483, 581 N.E.2d 637. The intent of the legislature in enacting the Registration Act was "to create an additional method of protection for children from the increasing incidence of sexual assault and sexual abuse." Adams, 144 Ill.2d at 387, 163 Ill.Dec. 483, 581 N.E.2d 637.
In response to an adult defendant's claim that the Registration Act violated his right to substantive due process, we held that the public interest to be served by the Registration Act was the assistance of law enforcement in the protection of children. Adams, 144 Ill.2d at 390, 163 Ill.Dec. 483, 581 N.E.2d 637. We further held that the *758 Registration Act served that purpose by providing officers ready access to information on known child sex offenders. Adams, 144 Ill.2d at 390, 163 Ill.Dec. 483, 581 N.E.2d 637. We concluded that there was nothing unreasonable in the statute's method of serving its purpose given the direct relationship between the registration of sex offenders and the protection of children. Adams, 144 Ill.2d at 391, 163 Ill.Dec. 483, 581 N.E.2d 637. Accordingly, the statute satisfied the requirements of substantive due process. Adams, 144 Ill.2d at 391, 163 Ill.Dec. 483, 581 N.E.2d 637.
Subsequently, we upheld a constitutional challenge to the Notification Law. See People v. Malchow, 193 Ill.2d 413, 430, 250 Ill.Dec. 670, 739 N.E.2d 433 (2000). In Malchow, we held that the purpose of the Notification Law, like the Registration Act, was the protection of the public from sex offenders. Malchow, 193 Ill.2d at 420, 250 Ill.Dec. 670, 739 N.E.2d 433.
In the context of a 12-year-old sex offender, the public interest to be served by the Registration Act remains unchanged. The public interest is to assist law enforcement in the protection of the public from juvenile sex offenders. The Registration Act as applied to a 12-year-old child serves that public interest by providing police officers ready access to information on known juvenile sex offenders.
J.W. acknowledges that the public interest the Registration Act is intended to serve is the protection of the public from sex offenders. J.W. argues, however, that in contrast to an adult offender or even a juvenile that could be charged and tried as an adult, requiring a 12-year-old child to register as a sex offender for the rest of his life is not a reasonable method of accomplishing the objective of protecting the public. J.W. observes that juveniles traditionally have been viewed as less culpable than adults and as more amenable to rehabilitation and treatment. J.W. argues that imposing a lifetime registration requirement on a 12-year-old child is at odds with the purpose and policy of the Juvenile Court Act (705 ILCS 405/1-1 et seq. (West 2000)).
J.W. maintains that it is not reasonable to hold a child that has been treated in the juvenile court system, and could only be treated in the juvenile court system, to an adult standard of reporting and registration for the rest of his life. J.W. observes that among the purposes and policies of the Juvenile Court Act are the protection and the rehabilitation of minors. J.W. also cites In re Nicholas K., which in finding that juvenile sex offenders are not required to register, concluded that requiring a delinquent juvenile to register as a sex offender is inconsistent with the purposes of the Juvenile Court Act. In re Nicholas K., 326 Ill.App.3d at 500, 260 Ill.Dec. 508, 761 N.E.2d 352. The Nicholas K. court observed that the overriding purpose of the Juvenile Court Act is to promote the minor's best interest and to correct, not punish. In re Nicholas K., 326 Ill.App.3d at 500-01, 260 Ill.Dec. 508, 761 N.E.2d 352.
It is true that one of the purposes of the Juvenile Court Act is the rehabilitation of the minor. See 705 ILCS 405/5-101(1)(c) (West 2000). However, effective January 1, 1999, the purpose and policy section of the Juvenile Court Act was amended to provide, in pertinent part:
"It is the intent of the General Assembly to promote a juvenile justice system capable of dealing with the problem of juvenile delinquency, a system that will protect the community, impose accountability for violations of law and equip juvenile offenders with competencies to live responsibly and productively. To effectuate this intent, the General Assembly *759 declares the following to be important purposes of this Article:
(a) To protect citizens from juvenile crime.
(b) To hold each juvenile offender directly accountable for his or her acts." 705 ILCS 405/5-101(1)(a), (1)(b) (West 2000).
This court has recognized that the amendments to the purpose and policy section of the Juvenile Court Act represent a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and of holding juveniles accountable for violations of the law. In re A.G., 195 Ill.2d 313, 317, 253 Ill.Dec. 911, 746 N.E.2d 732 (2001). Indeed, confronted with a similar issue, the Supreme Court of Delaware recognized:
"[A]lthough we are aware that the juvenile justice system places emphasis on the best interests of the child, sex offenders of any age present unique problems. The General Assembly enacted the Sex Offender Registration Statute in an effort to protect society from both the adult and the youthful sex offender." Helman v. State, 784 A.2d 1058, 1079 (Del.2001).
Given the shift in the purpose and policy of the Juvenile Court Act to include the protection of the public from juvenile crime and holding juveniles accountable, as well as the serious problems presented by juvenile sex offenders, we find no merit to J.W.'s claim that requiring him to register as a sex offender for life is at odds with the purpose and policy of the Juvenile Court Act.
Nonetheless, in support of his claim that the registration of a 12-year-old sex offender is not reasonable, J.W. also contends that there are other less offensive but equally effective means of protecting the public from juvenile sex offenders. For example, J.W. notes that even though he could not be subject to incarceration for more than 30 days due to his age (see 705 ILCS 405/5-710(1)(b) (West 2000)), his probationary period must be at least five years (see 705 ILCS 405/5-715(1) (West 2000)). In addition, J.W. observes that a trial court may impose conditions of probation, including that: the minor obtain therapy and treatment; the minor's contact with his or her victims and other children be limited or prohibited; the minor be subject to a period of home confinement; and the minor's parents be subject to monitoring or supervisory conditions. See 705 ILCS 405/5-715(2), 5-110 (West 2000).
J.W. concedes that the considerations at issue might be different if the registration was for a limited period of time, if dissemination of the information was limited in scope, or if the minor could be and was treated as an adult for purposes of criminal prosecution. In advancing this argument, J.W. reads the Notification Law as allowing the public unlimited access to information concerning juvenile sex offenders, including access via the Internet. J.W. maintains that requiring a 12-year-old child to register for the rest of his life as a sex offender and allowing the general public unfettered access to identifying information about that child is not a reasonable means of accomplishing the legislature's goal of protecting the public and is offensive to this country's fundamental precepts of justice.
We first observe that contrary to J.W.'s claim that the Notification Law gives the general public "immediate, unlimited, and permanent access to identifying information about him," the Notification Law actually strictly limits the availability of information with regard to juvenile sex offenders. Specifically, the Notification Law provides:
"The Department of State Police and any law enforcement agency having jurisdiction *760 may, in the Department's or agency's discretion, provide the information specified in subsection (b) [i.e., offender's name, address, date of birth, offense], with respect to a juvenile sex offender, to any person when that person's safety may be compromised for some reason related to the juvenile sex offender." 730 ILCS 152/120(e) (West 2000).
Consequently, information concerning a juvenile sex offender may be disseminated to a member of the public only if that person's safety might be compromised for some reason and only in the appropriate agency's or department's discretion.[3] Information concerning juvenile sex offenders is not available over the Internet. We find, therefore, that the extremely limited dissemination of information concerning juvenile sex offenders supports a finding that the registration of juvenile sex offenders is a reasonable means of protecting the public.
In addition, although J.W. suggests alternate means of accomplishing the legislature's objective in this case, it is well settled that the rational basis test does not require that the statute be the best means of accomplishing the legislature's objectives. People ex rel. Lumpkin v. Cassidy, 184 Ill.2d 117, 124, 234 Ill.Dec. 389, 703 N.E.2d 1 (1998). It is best left to the legislature and not the courts to determine whether a statute is wise or whether it is the best means to achieve the desired result. Cassidy, 184 Ill.2d at 124, 234 Ill. Dec. 389, 703 N.E.2d 1. If there is any conceivable basis for finding a rational relationship, the statute will be upheld. Cassidy, 184 Ill.2d at 124, 234 Ill.Dec. 389, 703 N.E.2d 1.
With the foregoing principles in mind, we must reject J.W.'s claim that the statute at issue violates substantive due process. Clearly there is a rational relationship between the registration of juvenile sex offenders and the protection of the public from such offenders. Requiring the registration of juvenile sex offenders, even where the offender is only 12-years-old and the duration of registration is for life, is reasonable in light of the strict limits placed upon access to that information. Whether there are better means to achieve this result, such as limiting the duration of registration for all juvenile sex offenders including juvenile sexual predators, is a matter better left to the legislature.
As a final matter, we note that the amici assert that the lifetime registration and the notification requirements violate procedural due process under the Illinois and United States Constitutions. J.W., however, has not raised a procedural due process claim and in fact expressly stated that he was not challenging the Registration Act and the Notification Law on procedural due process grounds. Amici also claim that enforcement of the registration and notification requirements violate state and federal constitutionally protected privacy interests. Neither the State nor J.W., however, has raised a privacy issue in his brief to this court.
An amicus curiae is not a party to an action but rather is a "friend" of the court. People v. P.H., 145 Ill.2d 209, 234, 164 Ill.Dec. 137, 582 N.E.2d 700 (1991). Consequently, the sole function of *761 an amicus is to advise or make suggestions to the court. P.H., 145 Ill.2d at 234, 164 Ill.Dec. 137, 582 N.E.2d 700. An amicus takes the case as he finds it, with the issues as framed by the parties. P.H., 145 Ill.2d at 234, 164 Ill.Dec. 137, 582 N.E.2d 700. This court need not pass on grounds of invalidity solely urged by an amicus. P.H., 145 Ill.2d at 234, 164 Ill.Dec. 137, 582 N.E.2d 700; accord Hanrahan v. Williams, 174 Ill.2d 268, 281, 220 Ill.Dec. 339, 673 N.E.2d 251 (1996). Consequently, we decline to address the procedural due process and privacy issues raised by the amici.
J.W. next contends that requiring a 12-year-old child to register as a sex offender and allowing the public access to information concerning juvenile sex offenders violates the eighth amendment and the proscription against double jeopardy. The State argues that J.W. has waived this issue, noting that J.W. did not raise this issue in the trial court or the appellate court, nor did he raise this issue in his petition for leave to appeal to this court.
The State is correct that J.W. did not raise these constitutional challenges in the trial court or the appellate court or in his petition for leave to appeal. As noted, however, a constitutional challenge to a criminal statute can be raised at any time. Bryant, 128 Ill.2d at 454, 132 Ill.Dec. 415, 539 N.E.2d 1221. Accordingly, we find that waiver does not bar consideration of these issues.
J.W. concedes that this court has held that the Registration Act and the Notification Law are not punitive and therefore do not violate the eighth amendment. See People v. Malchow, 193 Ill.2d 413, 250 Ill.Dec. 670, 739 N.E.2d 433 (2000). J.W. distinguishes Malchow, however, on the ground that the defendant in Malchow was an adult, and on the ground that the version of the Notification Law at issue in Malchow provided for limited dissemination of the information in question, while the current version of the Notification Law provides that anyone can access information on registered sex offenders at any time, including through the Internet.
We first address the claim that the Notification Law constitutes cruel and unusual punishment because it allows for unlimited dissemination of information concerning juvenile sex offenders. Both J.W. and the amici read the amendments to the Notification Law as providing for dissemination of information concerning juvenile sex offenders to anyone with access to the Internet. J.W. and amici argue that providing such information over the Internet without restriction clearly is punitive when the sex offender is a 12-year-old boy.
As discussed above, however, J.W. and amici are reading the Notification Law incorrectly. The Notification Law specifically addresses juvenile sex offenders and provides that information concerning juvenile sex offenders is not available on the Internet and public access to information concerning juvenile sex offenders is limited to those whose safety might be compromised for some reason related to the juvenile sex offender. See 730 ILCS 152/120(e) (West 2000). In fact, the debates concerning House Bill 2721 reflect the limited dissemination of information concerning juvenile sex offenders. House Bill 2721 amended the Notification Law as well as the Registration Act to include juvenile sex offenders. In discussing the registration of juvenile sex offenders, Representative Klingler observed that "Notification, however, is limited to schools and when public safety is at risk then the juveniles would not be on the Internet." 91st Ill. Gen. Assem., House Proceedings, March 10, 1999, at 143 (statements of Representative Klingler).
Public information concerning juvenile sex offenders thus is much more restricted *762 than information concerning adult sex offenders. Given that the dissemination of information concerning juvenile sex offenders is even narrower than the dissemination of information at issue in Malchow, we disagree with J.W. that Malchow is distinguishable and is not binding precedent.
With regard to the fact that the defendant in Malchow was an adult, J.W. analogizes the lifetime registration requirement in this case to the imposition of the death penalty and observes that the imposition of the death penalty on a child under the age of 16 constitutes cruel and unusual punishment.
We find no merit to this argument. There is no question that the death penalty is a punishment. In Malchow and Adams, however, this court rejected claims that the Registration Act and the Notification Law constitute punishment. We are not persuaded that requiring a juvenile sex offender to register and allowing very limited public access to notification concerning the juvenile's status as a sex offender compels a different result. See In re Ayres, 239 Mich.App. 8, 608 N.W.2d 132 (1999) (given strict statutory safeguards protecting confidentiality of juvenile sex offenders, registration act as applied to juveniles neither punishes juvenile nor offends premise that a reformed adult should not have to carry stigma of youthful offense). We therefore reject J.W.'s claim that the Registration Act and Notification Law as applied to juvenile sex offenders constitutes cruel and unusual punishment.
As the State observes, J.W.'s argument that requiring him to register as a sex offender violates the proscription against double jeopardy is based on his claim that the registration requirement constitutes cruel and unusual punishment. Because we hold that the registration requirement does not constitute punishment, J.W.'s double jeopardy argument likewise must fail. See Malchow, 193 Ill.2d at 426, 250 Ill.Dec. 670, 739 N.E.2d 433 (given holding that Registration Act and Notification Law are not punitive, defendant's claim that those statutes violate double jeopardy also must fail).
J.W.'s final argument is that the trial court's condition that he not reside in or enter South Elgin during the term of his probation is overly broad, unreasonable, and violates J.W.'s constitutional rights. J.W. claims that banishing a 12-year-old child from the entire town in which he and his family resided is not reasonably related to the goals of rehabilitating the minor or protecting the public. J.W. concedes that the Juvenile Court Act allows the trial court to impose, as a condition of a minor's probation, the requirement that the minor refrain from entering a specific geographic area (see 705 ILCS 405/5-715(2)(r) (West 2000)), but argues that the condition here which provides for no circumstances under which J.W. can be present in South Elgin is too broad.
Section 5-715(2)(r) of the Juvenile Court Act provides:
"(2) The court may as a condition of probation or of conditional discharge require that the minor:
* * *
(r) refrain from entering into a designated geographic area except upon terms as the court finds appropriate. The terms may include consideration of the purpose of the entry, the time of day, other persons accompanying the minor, and advance approval by a probation officer, if the minor has been placed on probation, or advance approval by the court, if the minor has been placed on conditional discharge." (Emphasis added.) 705 ILCS 405/5-715(2)(r) (West 2000).
*763 Thus, the Juvenile Court Act allows a court to impose, as a condition of probation, certain restrictions on a minor's ability to be present within a designated geographical area if the court includes terms whereby the probationer can enter the restricted area for legitimate purposes. The order in the case at bar, however, goes furtherit prohibits J.W. from residing in his own home in the community where he had been living with his family. Moreover, the order banishes J.W. from the Village of South Elgin without providing any terms or exceptions to its application. Accordingly, J.W. is prohibited, as a condition of probation, from entering South Elgin for any purpose. Consequently, the condition of probation imposed on J.W. in the case at bar is not one which is explicitly provided for by statute.
Although the banishment condition of probation is not expressly provided for by statute, it may, nonetheless, be a constitutionally valid condition of probation. It has been recognized that courts have broad discretion to impose probation conditions, whether expressly allowed by statute or not, to achieve the goals of fostering rehabilitation and protecting the public. See People v. Meyer, 176 Ill.2d 372, 378, 223 Ill.Dec. 582, 680 N.E.2d 315 (1997); People v. Harris, 238 Ill.App.3d 575, 581, 179 Ill.Dec. 560, 606 N.E.2d 392 (1992). Of course, the wide latitude given to courts in setting conditions of probation is not boundless. Harris, 238 Ill.App.3d at 580, 179 Ill.Dec. 560, 606 N.E.2d 392. The court's discretion is limited by constitutional safeguards and must be exercised in a reasonable manner. Harris, 238 Ill. App.3d at 581, 179 Ill.Dec. 560, 606 N.E.2d 392. "The constitutional safeguards, which circumscribe a trial court's exercise of its discretion to impose conditions, are the basic constitutional rights of the probationer." Harris, 238 Ill.App.3d at 581-82, 179 Ill.Dec. 560, 606 N.E.2d 392.
In People v. Pickens, 186 Ill.App.3d 456, 460, 134 Ill.Dec. 746, 542 N.E.2d 1253 (1989), it was recognized that probation conditions which impose geographic restrictions on travel implicate liberty interests. Reference was made in Pickens to People v. Beach, 147 Cal.App.3d 612, 621-22, 195 Cal.Rptr. 381, 386-87 (1983), wherein the court held:
"`A probationer has the right to enjoy a significant degree of privacy, or liberty, under the Fourth, Fifth and Fourteenth Amendments to the federal constitution [citations].' [Citation.]
A citizen has a basic constitutional right to intrastate as well as interstate travel. [Citation.] Many other fundamental rights such as free speech, free assembly and free association are often tied in with the right to travel. [Citation.] The right to acquire, own, enjoy and dispose of property is also a basic fundamental right guaranteed by the Fourteenth Amendment to the United States Constitution. [Citation.]"
Although the condition of probation imposed on J.W. in the case at barbarring J.W. from residing in or going to South Elginimplicates his constitutional rights, a condition of probation which impinges on fundamental constitutional rights is not automatically deemed invalid. Even fundamental constitutional rights are not absolute and may be reasonably restricted in the public interest. City of Chicago v. Morales, 177 Ill.2d 440, 460, 227 Ill.Dec. 130, 687 N.E.2d 53 (1997) (personal liberties are not absolute and only governmental actions which intrude upon personal liberties arbitrarily or in an utterly unreasonable manner violate the due process clause); Harris, 238 Ill.App.3d at 582, 179 Ill.Dec. 560, 606 N.E.2d 392; Beach, 147 Cal.App.3d at 622, 195 Cal. Rptr. at 387. Thus, when deciding the propriety of a condition of probation imposed *764 in a particular case, whether explicitly statutory or not, the overriding concern is reasonableness. In re M.P., 297 Ill.App.3d 972, 976, 232 Ill.Dec. 223, 697 N.E.2d 1153 (1998); People v. Ferrell, 277 Ill.App.3d 74, 79, 213 Ill.Dec. 646, 659 N.E.2d 992 (1995). To be reasonable, a condition of probation must not be overly broad when viewed in the light of the desired goal or the means to that end. In re J.G., 295 Ill.App.3d 840, 843, 230 Ill.Dec. 60, 692 N.E.2d 1226 (1998). In other words, "`[w]here a condition of probation requires a waiver of precious constitutional rights, the condition must be narrowly drawn; to the extent it is overbroad it is not reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights.'" (Emphasis omitted.) In re White, 97 Cal.App.3d 141, 146, 158 Cal. Rptr. 562, 565-66 (1979), quoting People v. Mason, 5 Cal.3d 759, 768, 488 P.2d 630, 635, 97 Cal.Rptr. 302, 307 (1971).
When assessing the reasonableness of a condition of probation it is appropriate to consider whether the restriction is related to the nature of the offense or the rehabilitation of the probationer. Meyer, 176 Ill.2d at 378, 223 Ill.Dec. 582, 680 N.E.2d 315; Pickens, 186 Ill.App.3d at 460, 134 Ill.Dec. 746, 542 N.E.2d 1253. Other considerations are: (1) whether the condition of probation reasonably relates to the rehabilitative purpose of the legislation, (2) whether the value to the public in imposing this condition of probation manifestly outweighs the impairment to the probationer's constitutional rights, and (3) whether there are any alternative means that are less subversive to the probationer's constitutional rights, but still comport with the purposes of conferring the benefit of probation. Harris, 238 Ill.App.3d at 582, 179 Ill.Dec. 560, 606 N.E.2d 392; In re J.G., 295 Ill.App.3d at 843, 230 Ill.Dec. 60, 692 N.E.2d 1226.
In the case at bar, the requirement that J.W. not reside in South Elgin is severe. At the time the condition was imposed, the family residence was located in South Elgin and the restriction prevented J.W. from living with his parents until they sold the home and moved to another community. In a California case, People v. Beach, a banishment order which required an elderly woman to vacate the home she had owned and lived in for 24 years was held invalid. Beach, 147 Cal.App.3d at 622, 195 Cal.Rptr. at 387. The court found that the banishment served no valid purpose, stating:
"[T]he value to the public does not manifestly outweigh any impairment of appellant's constitutional rights of freedom of travel, speech, association, assembly and to the possession and enjoyment of her property. Simply causing appellant to move from one geographical area to another is of minimal value to the public when compared with the infringement of appellant's basic constitutional rights." Beach, 147 Cal.App.3d at 623, 195 Cal.Rptr. at 387.
The Beach court, when considering whether the banishment order would promote the probationer's rehabilitation, found that the condition might cause more damage due to the psychological stress that would be associated with such a move. Beach, 147 Cal.App.3d at 622, 195 Cal. Rptr. at 387. Further, the Beach court held that there were less subversive means that the court could utilize to accomplish its goals.
The situation in Beach is distinguishable from the case at bar. Here, despite the harshness of the residency restriction, it is a reasonable condition of probation. Clearly, this condition is related to the offenses. The victims of the sexual assaults for which J.W. was adjudicated delinquent were children living in J.W.'s *765 neighborhood. Further, due to the nature of the offenses and the hostile public sentiment they engendered, removing J.W. from the location where the offenses took place would be in his best interest and a benefit not only to his rehabilitation, but to the rehabilitation of his victims. In addition, the harshness of the residency restriction in the case at bar is tempered to a large degree by the fact that J.W.'s family expressed a willingness to move out of the community. From the record it appears that the court's order that J.W. not reside in South Elgin was not so much a restriction imposed by the court as it was an affirmation of the parent's expressed intent to leave the community. For all of these reasons, barring J.W. from residing in South Elgin is a constitutionally valid condition of probation and not unreasonable.
At the same time, however, banishing J.W. from entering South Elgin for any purpose is a condition of probation which is not narrowly drawn and, thus, an unconstitutionally overbroad restriction on J.W.'s exercise of his fundamental rights.
As noted earlier, a condition of probation is constitutionally valid if it is reasonable. However, a restriction on a probationer's travel into a specified geographic area is reasonable and not unconstitutionally overbroad only if (1) there is a valid purpose for the restriction, and (2) there is a means by which the probationer may obtain exemption from the restriction for legitimate purposes. In People v. Pickens, 186 Ill.App.3d 456, 134 Ill.Dec. 746, 542 N.E.2d 1253 (1989), our appellate court held:
"A court may, as a condition of probation or other sentence short of incarceration, bar a defendant from certain areas if the penalty is reasonably related to the offense, provided that, if the defendant has a legitimate and compelling reason to go to that area or place, he may apply to a specified authority for specific permission, as here to the probation officer.
We find the proviso to the condition imposed, permitting the defendant to obtain specific written permission from her probation officer to enter the restricted area if she had a legitimate reason to go there, removes the taint of banishment from the restriction and substitutes in its stead supervised guidance for permissive entry to the area." (Emphasis in original.) Pickens, 186 Ill.App.3d at 461-62, 134 Ill.Dec. 746, 542 N.E.2d 1253.
In the present case, banishing J.W. from going to South Elgin was a condition imposed in an attempt to minimize the possibility of J.W.'s contact with his victims. While this serves as a valid purpose for the restriction, the limitation imposed in the case at bar is too broad because it fails to make any provision for J.W. to enter the area for legitimate purposes.
Section 5-715(2)(r) of the Juvenile Court Act authorizes the court, as a condition of probation, to require a juvenile to "refrain from entering into a designated geographic area except upon terms as the court finds appropriate." (Emphasis added.) This language of the statute mirrors the constitutional requirement that the condition of probation be narrowly drawn. For this reason, the trial court, by failing to strictly conform the condition of probation to the requirements of the statute, imposed an overly broad and unconstitutional condition of probation. We therefore vacate the portion of the trial court's order of probation imposing the banishment condition as written, and remand the cause so that the court may consider whether the geographic travel restriction is still warranted and, if so, what appropriate terms for entering the geographic area should be applied.

*766 CONCLUSION
For the reasons stated, the judgment of the appellate court, affirming the judgment of the circuit court of Kane County, is affirmed in part, vacated in part and remanded for further proceedings consistent with this opinion.
Affirmed in part and vacated in part; cause remanded.
Justice RARICK took no part in the consideration or decision of this case.
Chief Justice McMORROW, specially concurring:
In the case at bar, this court upholds the constitutionality of the Sex Offender Registration Act (Registration Act) (730 ILCS 150/1 et seq. (West 2000)), which requires 12-year-old J.W., who was adjudicated delinquent on two counts of aggravated criminal sexual assault, to register as a sex offender for the rest of his life. Although I believe this ruling to be legally correct, I write separately to express my concern over the harshness of this lifetime reporting requirement.
J.W. contends that imposing a lifetime registration requirement on juveniles, especially juveniles under the age of 13, violates substantive due process and the proscription against double jeopardy, and constitutes cruel and unusual punishment in violation of the eighth amendment to the United States Constitution.
While I agree with the court that the registration requirements mandated by the plain language of the Registration Act are constitutionally valid, I recognize a certain tension between a lifetime reporting requirement and the philosophical underpinnings of our juvenile justice system.
According to the provisions of our Juvenile Court Act, a minor under the age of 13 can never be prosecuted under the criminal laws of this State, nor can a minor under the age of 13 be the subject of an extended juvenile prosecution. 705 ILCS 405/5-130, 5-805, 5-810 (West 2000). In my view, these provisions reflect a legislative understanding that children under the age of 13, no matter how serious the offense charged, "simply are too immature as a matter of law to be tried as an adult." In re Registrant J.G., 169 N.J. 304, 325, 777 A.2d 891, 904 (2001). Children under the age of 13 have a diminished capacity to form criminal intent. It seems incongruous, then, to make no distinction in the treatment of juveniles under the age of 13 for purposes of the Registration Act.
I observe that, while all 50 states have adopted sex offender registration and community notification laws, often referred to as Megan's Laws (see State v. Misiorski, 250 Conn. 280, 292, 738 A.2d 595, 601-02 (1999) (providing historical explanation of Megan's Laws and their adoption throughout the country)), the implementation of these laws, particularly with respect to juveniles, varies greatly from state to state. Some states do not expressly include juveniles in their law (see, e.g., Fla. Stat. Ann. § 775.21 (West 2000)), while others include only those juveniles who have been tried and convicted as adults (see, e.g., Del.Code Ann. tit. 11, § 4121(a)(4)(b) (Supp.2000)). In some instances, although registration requirements are made applicable to juveniles, the burden has been ameliorated by various means: by making a jury trial a condition precedent to juvenile registration, allowing the juvenile court the discretion to waive the registration requirement, providing that the duty to register will terminate at a certain age or by allowing the juvenile to petition for termination of the registration duty upon a clear showing that the juvenile has not reoffended and that registration is no longer necessary to protect the public.
I recognize that the laws in other jurisdictions which limit registration and notification *767 requirements with respect to juveniles are the result of policy determinations made by the governing bodies of those states. I further recognize that the authority to determine appropriate public policy for this state is vested in our legislature and not with this court. Thus, barring a constitutional violation, this court is constrained to uphold the registration and notification laws of this state as written.
In the case at bar, this court holds that the requirements of the Registration Act apply equally to adults and juveniles and that our constitutional safeguards do not prevent the Registration Act's lifetime registration provisions from being applied to minors of all ages. While I am compelled to agree with this determination, I, nevertheless, invite the legislature to reconsider the wisdom of imposing such a burden on juveniles, particularly juveniles under the age of 13. The public safety concerns which animate the registration and notification laws should be harmonized with our traditional understanding of the need to protect and rehabilitate the young citizens of this state.
Justice FREEMAN joins in this special concurrence.
Justice KILBRIDE, concurring in part and dissenting in part:
I concur in the majority's holding that the condition of probation barring J.W. from going to South Elgin fails to conform strictly to the requirements of the statute and is an overly broad and unconstitutional condition of probation. Although I agree with the majority that adjudicated juvenile delinquent sex offenders are required to register as sex offenders, I respectfully dissent in part because I disagree with the majority's interpretation of the Illinois Sex Offender Registration Act (Registration Act) (730 ILCS 150/1 et seq. (West 2000)) as requiring J.W. to register as a sexual predator for the rest of his life. Moreover, I believe that an interpretation requiring a 12-year-old child to register as a sexual predator for the rest of his natural life offends principles of substantive due process. Finally, I dissent because of the majority's unnecessary factual description of the sexual conduct between J.W. and the minor victims.
The primary purpose of statutory construction is to determine and give effect to the legislature's intent, while presuming the legislature did not intend to create absurd, inconvenient, or unjust results. In re D.D., 196 Ill.2d 405, 418-19, 256 Ill.Dec. 870, 752 N.E.2d 1112 (2001). The best indication of legislative intent is the language of the statute. In re D.L., 191 Ill.2d 1, 9, 245 Ill.Dec. 256, 727 N.E.2d 990 (2000). If the language of the statute is clear and unambiguous, there is no need to resort to other aids of construction. D.L., 191 Ill.2d at 9, 245 Ill.Dec. 256, 727 N.E.2d 990. A statute is ambiguous if it is capable of more than one reasonable interpretation. In re B.C., 176 Ill.2d 536, 543, 223 Ill.Dec. 919, 680 N.E.2d 1355 (1997). In ascertaining legislative intent, it is proper to compare statutes that concern the same subject matter and to consider statutes on related subjects. See Anderson v. City of Park Ridge, 396 Ill. 235, 244, 72 N.E.2d 210 (1947).
The parties disagree on the interpretation of the Registration Act as applied to juvenile sex offenders and acknowledge that the Registration Act is subject to differing reasonable interpretations. A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. People v. Jameson, 162 Ill.2d 282, 288, 205 Ill.Dec. 90, 642 N.E.2d 1207 (1994). Here, the Registration Act is clearly subject to more than one reasonable interpretation and is thus ambiguous. *768 See B.C., 176 Ill.2d at 543, 223 Ill.Dec. 919, 680 N.E.2d 1355 (a statute is ambiguous if it is capable of more than one reasonable interpretation). Accordingly, we must employ aids of statutory construction to determine legislative intent, while avoiding absurd, inconvenient, or unjust results. See D.D., 196 Ill.2d at 418-19, 256 Ill.Dec. 870, 752 N.E.2d 1112.
The legislature created two categories of sex offenders. Section 2(A) of the Registration Act defines a "sex offender" and section 2(E) defines a "sexual predator." Section 2(A-5) defines "juvenile sex offender." An adjudicated juvenile delinquent sex offender is a specific type of sex offender. In fact, the recent amendments to the Registration Act deleting the "juvenile sex offender" definition from section 2(A-5) and adding a subsection (5) to section 2(A) supports the inference that the legislature intended adjudicated juvenile delinquent sex offenders to be a specific category of sex offender. See Pub. Act 92-828, eff. August 22, 2002 (amending 730 ILCS 150/2, 3, 4, 5, 5-5, 6, 7, 8-5, 10 (West 2000)).
Nonetheless, I agree with the majority that J.W. falls within the definition of a "sex offender" because he was adjudicated a juvenile delinquent as a result of committing aggravated criminal sexual assault, an offense specified in section 2(B) of the Registration Act. I disagree, however, with the majority that a juvenile sex offender can be classified as a "sexual predator."
A reading of section 2(A-5) of the Registration Act and section 105 of the Sex Offender and Child Murderer Community Notification Law (Notification Law), together with section 2(E) of the Registration Act, makes it clear that a "juvenile sex offender" cannot be classified as a sexual predator. Both sections 2(A-5) of the Registration Act and 105 of the Notification Law specifically define a "juvenile sex offender" as one who commits any of the offenses specified in items "(B), (C), or (C-5)" of the Registration Act, and neither definition makes any reference to item (E) of the Registration Act that would result in the classification as a "juvenile sexual predator."
Section 2(E), on the other hand, specifically defines a "sexual predator" as one who is convicted of any of the offenses specified in items (1), (2), or (5) of section 2(E), or certified as a sexually dangerous person, or found to be a sexually violent person. 730 ILCS 150/2(E)(1), (E)(2), (E)(3), (E)(4), (E)(5) (West 2000). Section 2(E) contains no reference to section 2(A-5) or any indication that a "juvenile sex offender" may also be classified as a "sexual predator." In fact, there are absolutely no references to juveniles as "sexual predators" in either the Registration Act or the Notification Law.
Moreover, although the term "convicted" is given the same meaning as "adjudicated" for purposes of section 2(A), section 2(E) contains no similar pronouncement. Based upon section 2(E)'s silence on adjudications, the legislature must have intended that the term "sexual predator" apply only to persons who have actually been "convicted" in adult court of a specified offense.
Any other interpretation leads to unjust and absurd results. For instance, the majority's interpretation would subject so called "juvenile sexual predators" of any age to such reporting requirements, while a sex offender or a sexual predator who is convicted of first degree murder of a child must be at least 17 years of age to be subject to lifetime reporting requirements. See 730 ILCS 150/2(C-5), (E)(2) (West 2000). The legislature surely did not intend consequences so inconsistent with reason, logic, and common sense.
*769 Equally important, the State never has contended that and, indeed, it concedes in its brief that J.W. should not be required to register as a "sexual predator" and that his registration is limited to a period of 10 years. The State itself expresses concerns over the propriety of requiring a 12-year-old child to register as a sex offender for the rest of his life, remarking that,
"As a sex offender, the registration of the minor is limited to 10 years. A 10-year requirement * * * strikes a fair balance between Respondent's desire for a limited registration time and the People's concerns for protecting the public."
The State further acknowledges in its brief that the trial court ordered J.W. to register as a "sex offender," not as a "sexual predator." The State also acknowledges that the appellate court mistakenly determined, sua sponte, that J.W. must register as a "sexual predator."
J.W. was not convicted as an adult in a criminal court and cannot be treated as an adult in every aspect of sex offender registration and community notification. Juveniles convicted as adults are classified as either "sex offenders" or "sexual predators" based upon their specific convictions. Such convictions are founded on determinations of guilt beyond a reasonable doubt, subject to the protections of the fourth, fifth, and sixth amendments to our federal constitution. However, under the majority's statutory interpretation, a juvenile who was not treated as an adult in criminal court but was adjudicated a juvenile delinquent sex offender in juvenile court cannot have the advantage of such protections. While some registration requirements such as the 10-year limitation may be justified, a juvenile delinquent sex offender can only be classified as a "sex offender" and cannot be classified as a "sexual predator."
This statutory interpretation is consistent with current practice and the official guides that are widely disseminated by the Illinois State Police. See A Guide to Sex Offender Registration in Illinois, Prepared for: Illinois Criminal Justice Agencies, at 6, 31, 33 (October 1, 2002) ("Adjudicated juvenile delinquent sex offenders are required to register effective July 1, 1999. Adjudicated juvenile delinquent sex offenders are not predators" (emphasis added) and "[a]djudicated juvenile delinquent sex offenders cannot be classified as sexual predators (emphasis in original)"); see also A Guide to Sex Offender and Child Murder Community Notification Law in Illinois, Prepared for: Illinois Criminal Justice Agencies (October 1, 2002).
This interpretation of the statute is also consistent with the fact that juveniles who engage in sexually inappropriate behavior do not necessarily pose a long-term risk of reoffending. "In many instances, sexually improper behavior by such young children [under age 14] is more a reflection of inadequate adult supervision, immaturity, inappropriate media exposure, or a prior history of emotional abuse than it is of irremediable sexually predatory inclinations." In re Registrant J.G., 169 N.J. 304, 340, 777 A.2d 891, 913-14 (2001). Accordingly, I believe that while the trial court properly ordered J.W. to register as a juvenile sex offender, this registration requirement is limited to 10 years from the date of adjudication.
I agree with the majority that information concerning J.W. cannot be disseminated to the public, placed on the Internet, or made available to the public except when public safety is threatened. The majority does not make clear, however, that for purposes of community notification, the adjudicated juvenile delinquent sex offender should continue to be treated as a juvenile, even though he or she reaches the age of 18.
I further disagree with the majority's analysis that subjecting a 12-year-old *770 child to lifetime registration requirements as a "sexual predator" comports with principles of substantive due process. To comply with substantive due process, a statute must bear a reasonable relationship to a public interest to be served, and the means adopted must be a reasonable method of accomplishing the desired objective. People v. Adams, 144 Ill.2d 381, 390, 163 Ill.Dec. 483, 581 N.E.2d 637 (1991).
In Adams, this court found that the State has an interest in protecting the public from sexual offenders and that the Registration Act bears a reasonable relationship to that interest. Adams, 144 Ill.2d at 391, 163 Ill.Dec. 483, 581 N.E.2d 637. However, in Adams, this court only reviewed the registration requirements in the adult context. The majority fails to acknowledge that adjudicated juvenile delinquent sex offenders do not enjoy the same panoply of rights and safeguards as adults and juveniles prosecuted as adults in criminal court. Requiring a 12-year-old child to register as a sexual predator for the rest of his life is an unreasonable means of furthering the state's interest. The majority misses this obvious conclusion and, unfortunately, ignores the State's concession of that point.
Although this court has recognized that recent amendments to the Juvenile Court Act have resulted in juvenile proceedings that are "similar" to adult criminal proceedings (In re A.G., 195 Ill.2d 313, 317-19, 253 Ill.Dec. 911, 746 N.E.2d 732 (2001)), there remain fundamental differences between the juvenile and criminal justice systems that militate against holding a 12-year-old child to an adult standard of registration and reporting for the rest of his life. Children have lesser levels of maturity and, because of their corresponding inability to control their behavior or to comprehend fully the consequences of their actions, their criminal acts are generally considered less culpable than those of an adult, and they are seen as more amenable to treatment and rehabilitation. Thompson v. Oklahoma, 487 U.S. 815, 835, 108 S.Ct. 2687, 2698-99, 101 L.Ed.2d 702, 718-19 (1988) (plurality op.). In fact, the Juvenile Court Act of 1987 distinguishes between juveniles over and under the age of 13. Under the provisions of the Juvenile Court Act, a juvenile court judge may enter an order permitting a minor 13 years of age or older to be prosecuted under the criminal laws of the state if the judge finds "that it is not in the best interests of the public to proceed under this Act." 705 ILCS 405/5-805(3)(a) (West 2000). There is no similar provision for the transfer of minors under the age of 13. "It is clear that the purpose of a transfer proceeding is to balance the best interests of a juvenile offender, particularly as the offender's interests relate to his potential for rehabilitation, against society's legitimate interest in being protected from criminal victimization perpetrated by minors." People v. Morgan, 197 Ill.2d 404, 424-25, 259 Ill.Dec. 405, 758 N.E.2d 813 (2001). The transfer provisions of the Juvenile Court Act reflect a clear legislative determination that a child under the age of 13 is simply too immature as a matter of law to be tried as an adult, no matter how serious the offense.
It is indisputable that J.W. could not have been prosecuted as an adult for his conduct. To treat him as an adult by requiring him to comply with lifetime registration requirements cannot seriously be considered a "reasonable" means of furthering the state's interest. I can conceive of no legitimate rationale for subjecting a juvenile delinquent under the age of 13 to lifetime registration requirements. Accordingly, I believe that subjecting juvenile delinquents to a lifetime registration requirement violates principles of substantive due process as it is an unreasonable method of accomplishing the state's desired *771 objective, and is therefore unconstitutional as applied to juvenile delinquents. See Adams, 144 Ill.2d at 390, 163 Ill.Dec. 483, 581 N.E.2d 637 (to comply with substantive due process, a statute must bear a reasonable relationship to a public interest to be served, and the means adopted must be a reasonable method of accomplishing the desired objective).
This court now puts juveniles, regardless of age, on equal footing with their adult counterparts without affording them equal constitutional rights and protections. After today's decision, children under the age of 12 who are adjudicated of certain sex offenses will be forever labeled as "sexual predators" and subjected to lifetime registration requirements.
Finally, I am troubled by the majority's detailed description of the sexual conduct between J.W. and his victims, including identifying the minor victims by initials. This court should be especially sensitive to protecting the identity of the juveniles and respecting the privacy of the juvenile victims. It is apparent from the record that many people in the community of South Elgin already know the identity of J.W. and his involvement in sexual conduct with other juveniles, but these people may not have known the identity of the victims or the exact nature of the sexual conduct. Given that J.W. pled guilty, such specific and graphic details are unnecessary to the disposition of this case and are, in my opinion, inappropriate.
For the foregoing reasons, I respectfully dissent in part.
NOTES
[1] We note that the legislature recently amended the Registration Act to delete the separate definition of "juvenile sex offender" and to specifically provide that a "sex offender" means any person who is "adjudicated a juvenile delinquent as the result of committing or attempting to commit" certain specified acts, including aggravated criminal sexual assault. Pub. Act 92-828, eff. August 22, 2002 (adding 730 ILCS 150/2(A)(5)).
[2] The recent amendments to the Registration Act also added the requirement that a sex offender as defined in section 2 or a sexual predator shall provide the Department of State Police with accurate information when registering, including information concerning his "school attended." Pub. Act 92-828, eff. August 22, 2002 (amending 730 ILCS 150/3(a) (West 2000)). A sex offender or sexual predator further is required to register with the chief of police in each of the municipalities in which he or she attends school and with the sheriff in each of the counties in which he attends school. Pub. Act 92-828, eff. August 22, 2002 (amending 730 ILCS 150/3(a)(1), (a)(2) (West 2000)).
[3] Section 120 of the Notification Law recently was amended to clarify that "The Department of State Police and any law enforcement agency having jurisdiction may, in the Department's or agency's discretion, only provide the information specified in subsection (b), with respect to an adjudicated juvenile delinquent, to any person when that person's safety may be compromised for some reason related to the juvenile sex offender." Pub. Act 2-828, eff. August 22, 2002 (amending 730 ILCS 152/120(e) (West Supp.2001)).