2024 IL App (1st) 230567

FIRST DISTRICT
THIRD DIVISION
June 28, 2024

No. 1-23-0567

| | | |
|---|---|---|
| *In re* COMMITMENT OF JOHNNY BUTLER | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 08 CR 80007 |
| v. | ) | |
| | ) | |
| Johnny Butler, | ) | Honorable |
| | ) | Tyria B. Walton, |
| Respondent-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion.
Justices D.B. Walker and Van Tine concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent Johnny Butler was committed to institutional care in a secure treatment facility as a sexually violent person (SVP), pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2022)), from 2008 until his conditional release in 2023. He is currently 70 years old. The conditional release plan approved by the circuit court of Cook County includes 68 enumerated conditions. As stated in the plan, respondent's failure to abide by the conditions may be grounds for revocation of his release and return to a secure treatment facility. In this appeal, respondent advances multiple challenges to the imposition and scope of the conditions. As discussed below, we reverse the judgment of the circuit court and remand this matter with instructions to modify respondent's conditional release plan.

¶ 2                                    I. BACKGROUND

¶ 3                        A. *Respondent's Commitment Under the Act*

¶ 4     Shortly before respondent's scheduled release from prison in 2008, the State filed a petition for commitment under the Act. According to the petition, respondent was convicted of attempted rape in 1976 and sentenced to a prison term of 5 to 15 years. In 1981, he was sentenced to a prison term of 22 years following his convictions for rape and deviate sexual assault. Respondent was convicted of attempted aggravated criminal sexual assault in 1998 and sentenced to another 22-year term of imprisonment.

¶ 5     The petition stated that clinical psychologist Dr. Ray Quackenbush evaluated respondent in May 2008 and diagnosed him with (a) paraphilia not otherwise specified, nonconsenting persons, and (b) personality disorder not otherwise specified, with antisocial features. The State alleged that respondent was dangerous to others, as he suffered from mental disorders that made it substantially probable that he would engage in acts of sexual violence. The State requested that the circuit court find respondent to be an SVP and commit him to the Illinois Department of Human Services (DHS) for control, care, and treatment pursuant to section 40 of the Act (*id.* § 40). In July 2008, Dr. Quackenbush testified at a probable cause hearing; the circuit court made a finding of probable cause following the hearing.

¶ 6     During a jury trial in 2011, the State called Dr. David Suire, a DHS psychologist. After reviewing documentation regarding respondent (*e.g.*, police, prison, and treatment records), Dr. Suire conducted a clinical interview and a supplemental examination with respondent.

¶ 7     Dr. Suire testified regarding respondent's sex-related offenses that resulted in prison terms. At age 22, respondent grabbed a woman on the University of Illinois Chicago (UIC) campus, cursed at her, threatened to rape her if she did not turn over her money, and struck her in

the head and face. At some point, respondent ran away; the victim later identified him as her attacker. At age 27, respondent grabbed another woman on the UIC campus and forced her into a restroom with a knife. After raping her and forcing her to perform oral sex, he rifled through her purse. Respondent then told the victim "one more for the road" and vaginally raped her two more times. At age 45, he forced a woman into a stairwell, removed her pants, and struck her in the head with a brick; respondent fled when an unidentified individual approached them. According to Dr. Suire, respondent significantly minimized the severity of his actions, *e.g.*, claiming the victim was not hurt or that their sexual activity was consensual.

¶ 8       Dr. Suire also testified regarding respondent's other violent and nonviolent offenses and characterized him as "kind of a career criminal." During his terms of incarceration, respondent committed multiple violations, including possession of a medication that did not belong to him. At the DHS facility, respondent was involved in several fights, which Dr. Suire described as "a little atypical," particularly given his age. After testifying regarding the actuarial tools he employed to assess respondent's risk of reoffending, Dr. Suire ultimately opined that respondent satisfied the criteria to be an SVP.

¶ 9       The State next called Dr. Jessica Ransom, a clinical psychologist who performed comprehensive evaluations under the Act for the Illinois Department of Corrections. Based on a review of his criminal history and other records, Dr. Ransom testified that respondent had a "clearly sexually deviant arousal pattern," *i.e.*, he repeatedly went to the same location, identified women who were walking alone, and threatened or engaged in violent behavior. Like Dr. Suire, she used actuarial tools to assess respondent's risk of reoffending; his scores placed him in the high-risk category. Dr. Ransom opined that respondent's age—in his fifties at the time—was not a protective factor (which might lower his risk of reoffending), given that he committed a sexual

offense in his mid-forties and that his medical history did not suggest any physical condition which would prevent him from reoffending. Dr. Ransom concluded that respondent met the criteria to be an SVP under the Act.

¶ 10     The jury found respondent to be an SVP, and the circuit court entered judgment on the verdict. Respondent was ordered committed to DHS for institutional care in a secure facility. The circuit court denied his motion for a new trial, and the judgment was affirmed on appeal. *In re Commitment of Butler*, 2013 IL App (1st) 113606. Following his initial commitment, DHS submitted a written report to the circuit court on respondent's mental condition at least once every 12 months (725 ILCS 207/55 (West 2022)) for the purpose of determining whether he made sufficient progress to be conditionally released or his condition had so changed since the most recent periodic reexamination that he was no longer an SVP. Several legal challenges advanced by respondent were unsuccessful, and he thus remained in a secure facility for years.

¶ 11                         B. *Respondent's Conditional Release*

¶ 12     In March 2022, the State filed a motion for periodic review and argument for finding of no probable cause based on the 2022 annual reexamination reports (motion for periodic review). The motion for periodic review indicated that Dr. Suire evaluated respondent in February 2022 and concluded that he suffers from "Other Specified Paraphilic Disorder, Sexually Attracted to Non-consenting Females," *i.e.*, "a congenital or acquired condition affecting his emotional or volitional capacity that predisposes him to engage in acts of sexual violence." Dr. Suire opined that respondent should continue to be found to be an SVP under the Act, but that he had made sufficient progress in treatment to be conditionally released. Based on its expectation that respondent would file a petition for conditional release, the State requested that Dr. Barry Leavitt, Psy.D., be allowed to evaluate respondent pursuant to section 60(c) of the Act (*id.*

§ 60(c)); the request was granted.[1] Respondent filed a petition for conditional release in April 2022.

¶ 13    After evaluating respondent, Dr. Leavitt reached essentially the same conclusion as Dr. Suire, *i.e.*, respondent remained an SVP, but he had made sufficient progress in treatment to the point where he was no longer substantially probable to engage in acts of sexual violence if on conditional release.

¶ 14    In August 2022, the circuit court entered an order granting the State's motion for periodic review. The circuit court found that there was no probable cause to warrant an evidentiary hearing to determine whether respondent was still an SVP, but that respondent was "appropriate for conditional release." DHS and its contractor, Liberty Healthcare Corporation (Liberty Healthcare), were ordered to prepare a conditional release plan in accordance with the Act.

¶ 15    The proposed conditional release plan, which was submitted by DHS and Liberty Healthcare, included 68 enumerated conditions. The proposed plan further provided that respondent would be referred for specialized sex offender treatment and an initial assessment for alcohol and substance abuse treatment. Among other things, DHS and Liberty Healthcare established a case management team to "manage and contain" respondent during his conditional release, and he would be subject to global positioning system (GPS) tracking and random home visits. Respondent was required to agree to abide by all of the conditions, and his failure to do so could result in the revocation of his release and his return to a secure treatment facility.

¶ 16    Respondent filed objections to the proposed conditional release plan. He argued that specified conditions (a) operated as unconstitutional prior restraints on free speech, (b) were

---

[1]Section 60(c) of the Act provides that "[t]he State has the right to have the person evaluated by experts chosen by the State." 725 ILCS 207/60(c) (West 2022).

unconstitutionally overbroad or vague, (c) could punish him for inadvertent or innocuous conduct, (d) did not comply with the mandatory versions of the conditions set forth in the Act (see *id*. § 40(b)(5)), and (e) were unreasonable as they imposed additional restrictions beyond the Act's requirements without demonstrating the need for such restrictions. Although it challenged most of respondent's objections, the State agreed that four of the conditions should be modified to include a knowledge component, *e.g.*, instead of limiting respondent's contact with specific categories of individuals—such as felons, members of street gangs, drug users, and prostitutes— the restrictions would apply to "those known or who should have been known to [r]espondent as being" felons, gang members, etc.

¶ 17    In an order entered on February 24, 2023, the circuit court denied respondent's objections and entered the conditional release plan that was prepared for respondent without alterations, even as to the agreed-upon knowledge component. Respondent filed this timely appeal.

¶ 18                                II. ANALYSIS

¶ 19    Respondent challenges the imposition and scope of certain restrictions in his conditional release plan. Prior to addressing his arguments, we briefly discuss the basics of the Act.

¶ 20                                A. *The Act*

¶ 21    The Act authorizes the involuntary civil commitment of " 'sexually violent persons' " for " 'control, care and treatment.' " *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 48 (quoting 725 ILCS 207/40(a) (West 2008)). A "sexually violent person" (SVP) is defined to include an individual who has been convicted of a sexually violent offense and who is dangerous because he suffers from a mental disorder that makes it substantially probable that he will engage in acts of sexual violence. 725 ILCS 207/5(f) (West 2022); see *In re Commitment of Gavin*, 2014 IL App (1st) 122918, ¶ 1 (noting that proceedings under the Act "identify individuals who are

dangerous due to mental disorders that would predispose them to sexual violence and forces them into treatment for their own good and for the safety of society"). "Although commitment is potentially indefinite in nature, a committed individual may challenge his continued commitment under the Act through a petition for discharge or a petition for conditional release." *Stanbridge*, 2012 IL 112337, ¶ 50.

¶ 22 DHS is notified if the circuit court finds that the individual is appropriate for conditional release. 725 ILCS 207/40(b)(3) (West 2022). DHS is charged with preparing a plan that identifies the treatment and services the individual will receive in the community. *Id.* The plan "shall address the person's need, if any, for supervision, counseling, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment." *Id.* DHS may contract with public or private agencies (*e.g.*, Liberty Healthcare) to provide the treatment and services identified in the plan, and the plan must specify who will be responsible for providing the treatment and services. *Id.* The plan "shall be presented to the court for its approval within 60 days after the court finding that the person is appropriate for conditional release," unless additional time is requested. *Id.*

¶ 23 An order for conditional release places the individual in the custody, care, and control of DHS. *Id.* § 40(b)(5). Section 40(b)(5) of the Act provides that "[t]he court shall order the person be subject to the following rules of conditional release, in addition to any other conditions ordered, and the person shall be given a certificate setting forth the conditions of conditional release." *Id.* The Act then sets forth 28 conditions. *Id.*

¶ 24 When considering an SVP's challenge to the imposition of certain conditions in his conditional release plan, the Illinois Appellate Court in *In re Commitment of Holt*, 2022 IL App (1st) 210402, ¶ 89, noted the varying standards of review at issue, *e.g.*, a circuit court's decision

regarding conditional release should generally be reviewed for an abuse of discretion, whereas a *de novo* standard of review applies to determinations of whether the individual's constitutional rights have been violated. The *Holt* court distilled these "overlapping standards" into a single consideration: reasonableness. *Id.* To be reasonable, a condition " 'must not be overly broad when viewed in the light of the desired goal or the means to that end.' " *Id.* (quoting *In re J.W.*, 204 Ill. 2d 50, 78 (2003)). With this framework in mind, we turn to respondent's contentions.

¶ 25                    B. *Respondent's Conditional Release Plan*

¶ 26    As noted above, the Act provides that the circuit court "shall order" the individual to be subject to 28 enumerated rules of conditional release set forth in section 40(b)(5). 725 ILCS 207/40(b)(5) (West 2022). Respondent argues that this court should vacate the other conditions set forth in his plan: conditions 29 through 68. He also advances the broader contention that the circuit court improperly imposed various conditions which he maintains are unrelated to the Act, his treatment, or his history of sexually offending and which infringe on basic constitutional protections. Respondent requests that we remand this matter for the imposition of "individualized conditions of release."

¶ 27    We initially observe that the Act explicitly contemplates that conditions other than the enumerated 28 conditions may be imposed. Section 40(b)(5) provides that "[t]he court shall order the person be subject to the following rules of conditional release, *in addition to any other conditions ordered*." (Emphasis added.) *Id.*; see 59 Ill. Adm. Code 299.400(d) (2020) (stating that "[a]ll plans for conditional release shall, at a minimum, contain those conditions set forth in Section 40(b)(5) of the Act").

¶ 28    Our concern, however, is that the conditional release plan prepared for respondent in this case appears to be adopted almost verbatim from the conditional release plan of another SVP.

The circuit court case number of the other SVP was typewritten—and then crossed out by hand—on the initial page of respondent's conditional discharge plan. Respondent's plan also included a notation on each page that the plan was "Revised 7/2022," even though the circuit court herein did not order the preparation of a conditional release plan until August 23, 2022.

¶ 29    The State maintains that the fact that respondent is subject to many of the same discretionary conditions as other SVPs does not alone invalidate his conditional release plan. As SVPs (by definition) suffer from mental disorders which make it substantially probable that they will engage in acts of sexual violence (725 ILCS 207/5(f) (West 2022)), we agree with the State that it is not surprising that their conditional release plans would include many of the same conditions. Nevertheless, section 40 of the Act contemplates that DHS "shall arrange for control, care and treatment of the person *in the least restrictive manner* consistent with the requirements of the person and in accordance with the court's commitment order." (Emphasis added.) *Id.* § 40(b)(2).

¶ 30    Based on our review of the record in the instant case, we are uncertain whether the plan submitted by Liberty Healthcare/DHS and approved by the circuit court was properly designed for the control, care, and treatment of respondent in the least restrictive manner consistent with his requirements and in accordance with the commitment order. For example, while the plan imposes significant restrictions on respondent's movement, nothing therein appears to preclude respondent from entering the UIC campus without permission from his treatment team, even though he committed multiple sexual offenses at that location. Although we do not definitively opine that such a restriction is necessary, the absence of such a restriction—coupled with the other indications that respondent received a "boilerplate" plan—is potentially troubling.

¶ 31    The plan's noncompliance with *Holt* is also concerning. The appellate court in *Holt*

issued an opinion on September 9, 2022, which invalidated a provision in a conditional release plan that essentially banned the respondent from using the Internet. *Holt*, 2022 IL App (1st) 210402, ¶¶ 99, 111. The proposed conditional release plan for respondent in the instant case, which was submitted and approved after the opinion was issued in *Holt*, included a similar provision banning Internet usage. Although the parties' respective counsel argued regarding the effect of *Holt* on the proposed Internet prohibition in respondent's plan—and respondent's counsel made it clear that he was not seeking "unfettered, unmonitored" Internet access—the circuit court declined to strike or modify the condition. The circuit court stated, in part: "I will not allow unrestricted access to the Internet to Mr. Butler." As the State now concedes on appeal, such condition (condition 33) is unconstitutional under *Holt*. See *id.* ¶ 96 (observing that "[w]e live in an age where much of our lives are online" and that "[b]arring someone completely from the Internet effectively condemns him or her to a shadow existence in our present society").

¶ 32    To the extent that it may be questionable whether respondent's plan complied with the express mandate of *Holt* and otherwise provided for his treatment in the least restrictive manner consistent with his requirements and the commitment order, we are compelled to remand this matter to the circuit court for additional proceedings. *E.g.*, *United States v. Kelly*, 625 F.3d 516, 519-20 (8th Cir. 2010) (considering conditions of a defendant's supervised release; noting that courts "may not impose special conditions categorically on all individuals convicted of certain offenses" and that courts must be careful to conduct an individualized inquiry based on the defendant's criminal history and his specific offenses). The circuit court is directed to order DHS to timely prepare a new proposed conditional release plan consistent with the requirements of the Act and any other applicable law; to allow the parties to file objections to the proposed plan and responses thereto; and to conduct a hearing to finalize and approve a plan. In the interim, the

current conditional release plan shall remain in full force and effect, barring any circuit court order to the contrary.

¶ 33    Although we expect that the imposition of a new, individualized conditional release plan will eliminate some of the concerns raised by respondent on appeal, we anticipate that certain concerns may resurface in his future proceedings, and we thus briefly address those issues below.

¶ 34    Any provisions of the plan regarding respondent's Internet access must comply with *Holt*. See *Holt*, 2022 IL App (1st) 210402, ¶¶ 90-99. As the *Holt* court noted, respondent's conditional release team can monitor and limit his Internet usage in many ways (*id.* ¶¶ 97-98) without running afoul of his rights. Furthermore, as discussed above, the circuit court may impose conditions in addition to those explicitly enumerated in section 40 of the Act. See 725 ILCS 207/40(b)(5) (West 2022); 59 Ill. Adm. Code 299.400(d) (2020). The conditions should be drafted such that respondent may understand exactly what conduct the conditional release plan may prohibit, restrict, or require (see *People v. Vercolio*, 363 Ill. App. 3d 232, 238 (2006)) and should be narrowly tailored to the "desired goal" (internal quotation marks omitted) (*Holt*, 2022 IL App (1st) 210402, ¶ 89). Simply put, "[t]he dividing line between what is lawful and unlawful cannot be left to conjecture." (Internal quotation marks omitted.) *Connally v. General Construction Co.*, 269 U.S. 385, 393 (1926).

¶ 35    Finally, while we recognize that respondent has not been diagnosed with pedophilia, we wish to make clear that the imposition of conditions that restrict respondent's contact with children may be permissible and, in fact, necessary. Indeed, we observe that the Act explicitly requires the imposition of various restrictions limiting contact with children, irrespective of whether an SVP has been diagnosed with pedophilia. See, *e.g.*, 725 ILCS 207/40(b)(5)(I), (Q), (V), (Z) (West 2022); see also *id.* § 40(b)(5)(BB) (requiring an SVP on conditional release to

11

"comply with all other special conditions that [DHS] may impose that restrict the person from high-risk situations and limit access or potential victims").

¶ 36                                III. CONCLUSION

¶ 37    The Act requires DHS to arrange for respondent's control, care, and treatment in the least restrictive manner consistent with his requirements and the commitment order. *Id.* § 40(b)(2). Given the seemingly generic nature of the conditional release plan approved for respondent, it is unclear whether the Act's mandate was satisfied in this case. A non-individualized plan not only potentially impairs respondent's rights and his rehabilitation, but also potentially jeopardizes the safety of the community. We thus conclude that the circuit court abused its discretion in approving respondent's current conditional release plan. See *Holt*, 2022 IL App (1st) 210402, ¶ 89.

¶ 38    The judgment of the circuit court of Cook County is reversed, and this matter is remanded for further proceedings. The circuit court is directed to order DHS to timely prepare a new proposed conditional release plan for respondent that is consistent with the requirements of the Act and any other applicable law, including the terms of this order. The current conditional release plan shall remain in full force and effect, barring any circuit court order to the contrary, until the circuit court approves a new conditional release plan.

¶ 39    Reversed and remanded with directions.

---

*In re Commitment of Butler*, **2024 IL App (1st) 230567**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 08-CR-80007; the Hon. Tyria B. Walton, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael R. Johnson, of Law Office of Michael R. Johnson LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Katherine M. Doersch and Lauren E. Schneider, Assistant Attorneys General, of counsel), for the People. |