**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 250022-U

Order filed October 14, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* COMMITMENT OF CHARLES | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| NICHOLS | ) | La Salle County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 3-25-0022 |
| Charles Nichols, | ) | Circuit No. 05-MR-190 |
| | ) | |
| Respondent-Third Party Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Illinois Department of Human Services, | ) | |
| | ) | Honorable |
| Third Party Intervenor-Respondent-Appellee). | ) | Michael C. Janz, |
| | ) | Judge, presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Justices Davenport and Bertani concurred with the judgment.

_____

**ORDER**

¶ 1    *Held*:  The trial court abused its discretion in refusing to modify the conditions of the petitioner's release. A restriction on tobacco-related products had no reasonable nexus to his crimes, his rehabilitation, nor was it the least restrictive means to achieve the purpose of the statute.

¶ 2    Charles Nichols is a sexually violent person and a cigarette smoker. What do these two things have in common? That is the basic question in this case. In 2005, Nichols was civilly committed under the Sexually Violent Persons Commitment Act ("Commitment Act") (725 ILCS 207/1 *et seq*. (West 2004)). The terms of his 2021 conditional release included a restriction on the possession and use of tobacco-related products. He asked the circuit court to remove this condition, and the court denied the request. He appeals from that decision. We reverse.

¶ 3                                    I. BACKGROUND

¶ 4    In 1995, Nichols pled guilty to aggravated criminal sexual assault and aggravated criminal sexual abuse of a 12-year-old girl. He was sentenced to concurrent prison terms of 7 and 20 years.

¶ 5    In 2005, as Nichols was about to begin mandatory supervised release, the State filed a petition to commit him as a sexually violent person under the Commitment Act (725 ILCS 207/1 *et seq*.). A jury found Nichols to be a sexually violent person, and the circuit court ordered him committed to the Department of Human Services for institutional treatment. We affirmed the order in *In re Commitment of Charles Nichols*, 392 Ill. App. 3d 1140 (2009).

¶ 6    Nichols petitioned for conditional release in 2009, but the court denied the request. He filed another petition in 2011, which the court granted, directing the Department to prepare a conditional release plan. The State submitted a plan containing the statutory conditions of release as well as conditions specific to Nichols, with supervision by Liberty Healthcare Corporation. Nichols signed a certification stating that he would comply, and the circuit court approved the plan. He was released in 2012.

¶ 7        In 2014, the State petitioned to revoke Nichols's release after discovering he had concealed a romantic relationship with a coworker. Following a hearing, the circuit court granted the petition and returned him to institutional care.

¶ 8        In 2015, Nichols again petitioned for conditional release. The court granted the petition, approved a new plan prepared by the State, with Liberty supervision, and Nichols again promised to comply. He was released.

¶ 9        In 2020, the State sought to revoke his release for possessing prohibited sexual materials. The court granted the petition, and Nichols was returned to institutional care.

¶ 10       In 2021, he petitioned for conditional release again, and the circuit court granted conditional release under a third plan that included the statutory conditions, additional restrictions, and supervision by Liberty. Among the conditions was a prohibition on possessing or using tobacco products. Nichols signed a certificate of compliance, and the court approved the plan in 2022.

¶ 11       In June 2024, the State filed its annual report, recommending that Nichols remain on conditional release but not be discharged, as he continued to meet the criteria for commitment as a sexually violent person. The report described Nichols's criminal history, including his 1995 conviction and a 1985 conviction for raping an adult neighbor, as well as his admitted assaults of additional victims. It also noted his repeated violations of release conditions, failed polygraph tests, and ongoing sexual disorders, with testing showing arousal to sadism and opportunistic rape. His five-year recidivism risk was estimated at 28 percent, higher than the average for offenders with sexual convictions.

¶ 12       In August 2024, the State petitioned to revoke Nichols's release after he concealed purchases of tobacco. A violation report described cigarettes found in his jacket and unrecorded

debit transactions, which Nichols later admitted were for tobacco. He acknowledged making several unauthorized trips to purchase cigarettes, cigars, and rolling papers. At a later hearing, the State withdrew its petition, and the circuit court admonished Nichols instead of revoking release.

¶ 13       In September 2024, Nichols moved to amend his release plan, asserting that many of its conditions lacked a nexus to his underlying offense. He specifically challenged the tobacco condition. The court permitted the Department to intervene to defend the condition. At the hearing, the Department explained that the condition was necessary because sexually violent persons are typically housed in smoke-free apartments and eliminating the restriction could encourage Nichols to leave his residence without authorization. Nichols did not testify or present evidence.

¶ 14       In January 2025, the circuit court denied the motion, finding the tobacco restriction reasonable and related to the purposes of supervision. Nichols filed this appeal.

¶ 15                                    II. ANALYSIS

¶ 16       When considering the propriety of conditional release, courts must determine whether the conditions are reasonable. See *In re Commitment of Butler*, 2024 IL App (1st) 230567, ¶ 24. To be reasonable, a condition must not be excessively broad in relation to the desired goal or the means to that end. *Id*. ¶ 24; *In re Commitment of Holt*, 2022 IL App (1st) 210402, ¶ 89. Appropriate considerations include (1) "whether the restriction [was] related to the nature of the offense or the rehabilitation of the probationer," (2) "whether the condition of probation reasonably relate[d] to the rehabilitative purpose of the legislation," (3) "whether the value to the public in imposing th[e] condition *** outweigh[ed] the impairment to the probationer's constitutional rights," and (4) "whether there [were] any alternative means that [were] less subversive to the probationer's constitutional rights." *Id*. ¶ 89 (quoting *People v. Morger*, 2019 IL 123643, ¶ 19). The parties agree that the standard of review in this case is abuse of discretion. See *Butler*, 2024 IL App (1st) 230567,

4

¶ 24. Generally, an abuse of discretion exists where no reasonable person would take the position adopted by the trial court, or where the trial court acts arbitrarily, fails to employ conscientious judgment, or ignores recognized principles of law. See *In re Commissioner of Banks & Real Estate*, 327 Ill. App. 3d 441, 476 (2001).

¶ 17      At issue in this case is release condition 61, which forbade Nichols from "possess[ing] or smok[ing] cigarettes, cigars, [or] electronic cigarettes" and from "us[ing] any other tobacco products." In considering the request for modification, the trial judge stated, "I do agree that the act of smoking or vaping and the act of sexual violence don't necessarily link up hand in hand all the time." However, the judge observed that Nichols agreed to condition 61. He also acknowledged the Department's contention that the concern was not tobacco use itself; rather, it is the manner in which Nichols would obtain and use these products that was cause for concern. For example, Nichols had been placed in a "no-smoking" apartment, so allowing use of tobacco would have permitted him to go outside and smoke. The trial judge also seemed to agree with the Department's contention that condition 61 "helps [Nichols] avoid unnecessary contacts [with the public] and helps him avoid doing things that would get him in trouble."

¶ 18      The trial judge further stated:

> "I'm of the belief when I look at these commitments and when I look at these conditions, some of the conditions are to protect the public from the individual, but some of them are to protect the individual from doing something that's going to get him in more trouble. They're actually like parental guidelines to help you to do better things, to help you stay on the right path with the ultimate goal of getting out quicker, and based on the evidence that's before the Court here I can't say that it's unreasonable to prohibit cigarettes because of the incidental impact it can have on

other aspects of where you live, how you get them, your freedom and things like that. Under the circumstances that the Court has before it today there's just not enough there for the Court to say that it's an unreasonable condition. I think it's a reasonable condition."

¶ 19                    A. Relation Between the Restriction, the Offense, and the Rehabilitation

¶ 20        As to the first consideration in determining if an imposed condition is reasonable (*Butler*, 2024 IL App (1st) 230567, ¶ 24), the trial judge seemed to conclude no meaningful relationship existed between condition 61, Nichols's crimes, and the efforts to rehabilitate him. We agree. We have no evidentiary basis to conclude that tobacco-related products caused Nichols to commit the crimes he committed nor that the lack of access to tobacco-related products would likely aid in the rehabilitative process.

¶ 21                    B. Relation Between the Condition and the Statutory Rehabilitative Purpose

¶ 22        Turning to the second consideration in reviewing the reasonableness for an imposed condition, the Department notes that the rehabilitative purpose of the Commitment Act is, in part, intended to restrict sexually violent persons from high-risk situations and to limit access to potential victims. 740 ILCS 207/40(b)(5)(BB) (West 2024). The Department asserts the most robust arguments addressing that consideration, and the one the trial judge appeared to stress that factor the most in his ruling.

¶ 23        The basic gist of the Department's argument is that if Nichols is permitted to go to the store to purchase tobacco-related products, he will come into contact with an increased number of people in the general public, and by extension, this will increase the number of potential victims he could target for sexually assault. As the trial judge put it, the Department contends that condition 61

6

"helps him avoid unnecessary contacts and helps him avoid doing things that would get him in trouble."

¶ 24    We cannot say that it is a bad idea to minimize Nichols's opportunities for unsupervised social contact in public venues. But the problem with that argument is that it ignores Nichols's present ability to venture out into the community for any number of things, including shopping for groceries, trips to counseling, and the like. He is also permitted to go to the drug store to pick up prescriptions, and pharmacies like Walgreens (somewhat paradoxically) sell tobacco-related products. It is also possible that Nichols's mother could bring him cigarettes. Thus, condition 61 appears to be less about rehabilitation and more about intrusiveness. Given Nichols's present ability to visit merchants that carry tobacco products, condition 61 is at odds with the Commitment Act's stated purpose of arranging for the care and treatment of sexually violent persons " 'in the least restrictive manner.' " *Holt*, 2022 IL App (1st) 210402, ¶ 96 (quoting 725 ILCS 207/40). While a court's discretion is broad, it is not limitless; it cannot stretch so far as to turn a release plan into a lifestyle makeover.

¶ 25    C. Condition 61's Value to the Public Versus the Impairment on Nichols's Rights

¶ 26    Another relevant consideration is whether the public value of imposing the condition outweighs the impairment to Nichols's constitutional rights. *Id*. ¶ 89. At the outset, we must identify the constitutional right at stake. The Department correctly states Nichols has no constitutional right to have or use tobacco products. See *Johnson v. Halpin*, 413 Ill. 257, 270 (1952) ("[T]he State may control and even abolish the right to use cigarettes."), *abrogated in part on other grounds by Thorpe v. Mahin*, 43 Ill. 2d 36 (1969); *Independents Gas & Service Stations Ass'ns., Inc. v. City of Chicago*, 112 F. Supp. 3d 749, 754-55 (N.D. Ill. 2015) (Chicago's flavored tobacco ordinance "[did] not regulate activities that implicate constitutional rights"). Nichols, on

7

the other hand, does not sufficiently identify or argue a constitutional right that is at stake. Perhaps his claims are based on the Illinois Constitution's privacy rights under article I, section 6 (Ill. Const. 1970, art. I, § 6) or the Illinois Supreme Court's recognition of a right to be left alone (see *Lopez v. Fitzgerald*, 76 Ill. 2d 107, 119 (1979)). Or perhaps he is contemplating those protected personal liberties that have long been recognized, such as the right to travel, the right to freedom of movement, and the general right to associate with others. See *City of Chicago v. Morales*, 177 Ill. 2d 440, 460 (1997), *aff'd*, 527 U.S. 41 (1999). But he does not articulate any of these, and we will not raise constitutional arguments for Nichols. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29 (stating that "it is neither the function nor the obligation of this court to act as an advocate or search the record for error"). Moreover, in more general terms, we recognize substantial value in minimizing Nichols's contact with the community at large.

¶ 27        D. The Existence of Alternative Means Less Subversive to Nichols's Rights

¶ 28        The final consideration is "whether there [were] any alternative means that [were] less subversive to the probationer's constitutional rights." *Holt*, 2022 IL App (1st) 210402, ¶ 89. Again, Nichols does not adequately identify a constitutional right that is at stake, and we will not make that argument for him. *Edwards*, 2012 IL App (1st) 091651, ¶ 29. Regardless, we have already alluded to the existence of less restrictive means to advance the Commitment Act's purposes. Those could include limiting his tobacco-related purchases to instances in which he is already going to the store, capping the number of his store trips each week, or a wide range of other, less restrictive, possibilities, such as asking his mother to bring him tobacco-related products.

¶ 29                                III. CONCLUSION

¶ 30        Based on the foregoing, we conclude there is no reasonable relationship between tobacco-related products and Nichols's status as a sexually violent person. Nor is there a reasonable nexus

8

between banning these products and his rehabilitation efforts. Although there is a reasonable interest in minimizing Nichols's interaction with the community, condition 61 is not the least restrictive means to further that interest when Nichols is already permitted to shop for other items. For those reasons, we conclude that the trial court abused its discretion in denying the requested modification. Because the Department did not offer a contractual argument in support of the agreed conditions for release, we do not consider that issue. Accordingly, we remand the cause to the trial judge for further proceedings consistent with this order.

¶ 31       Reversed and remanded.