2025 IL App (4th) 250004

NO. 4-25-0004

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 11, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* D.J., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Stephenson County |
| Petitioner-Appellee, | ) | No. 23JD78 |
| v. | ) | |
| D.J., | ) | Honorable |
| Respondent-Appellant). | ) | Peter McClanathan, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court, with opinion.
Justices Steigmann and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1        On November 20, 2023, the State filed an amended petition for adjudication of wardship against respondent, D.J. (born December 2007). The amended petition alleged respondent committed two acts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(2)(i) (West 2022)) and a battery (*id.* § 12-3) against L.R. (born September 2014) on or about October 28-29, 2022. On August 26, 2024, the juvenile court found respondent guilty of all three charges. On December 16, 2024, the juvenile court sentenced respondent to two years' probation and imposed a condition on his probation that required respondent to have no unsupervised contact with any minor not related to him.

¶ 2        On appeal, respondent argues the juvenile court committed a clear or obvious error by imposing this unreasonable "no contact" condition of his probation. While recognizing his attorney in the juvenile court failed to object to the imposition of this condition of his probation,

respondent asks this court to review this issue pursuant to the plain-error doctrine. Alternatively, respondent argues his attorney provided ineffective assistance by failing to challenge the "no contact" condition of his probation. Additionally, respondent argues the one-act, one-crime rule requires this court to vacate his battery adjudication. Respondent concedes he also forfeited this issue but again seeks plain-error review.

¶ 3        Based on our review of the record and the arguments presented, we do not find respondent established the juvenile court committed a clear or obvious error by not vacating respondent's battery adjudication. However, we find respondent's attorney in the juvenile court provided ineffective assistance of counsel by not challenging the condition of respondent's probation requiring him to have no unsupervised contact with any unrelated minor. As a result, we vacate this condition of respondent's probation and remand this case to the juvenile court for entry of a revised probation order.

¶ 4                                    I. BACKGROUND

¶ 5        On October 11, 2023, the State filed a petition for adjudication of wardship against respondent, alleging he was a delinquent minor as defined by section 5-105(3) of the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/5-105(3) (West 2022)). According to the petition, on or about October 28-29, 2022, respondent committed the offenses of aggravated criminal sexual abuse, a Class 2 felony (720 ILCS 5/11-1.60(c)(2)(i) (West 2022)), and battery, a Class A misdemeanor (*id.* § 12-3), against L.R., who was eight years old at the time the offenses allegedly occurred. The State claimed it was in the best interests of respondent and the public that he be adjudged a ward of the juvenile court and asked for other relief under the Juvenile Act.

¶ 6        On November 20, 2023, the State filed an amended petition, adding an additional allegation of aggravated criminal sexual abuse. In the amended petition, one charge of aggravated

criminal sexual abuse alleged respondent touched L.R.'s vagina with his fingers, the other charge of aggravated criminal sexual abuse alleged respondent touched L.R.'s buttocks with his penis, and the battery charge alleged respondent "made physical contact of an insulting or provoking nature with L.R. in that he touched her on or about her body without her consent in an undesired fashion."

¶ 7 On April 1, 2024, the State filed a motion pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/115-10 (West 2022)), giving respondent notice it intended to introduce out-of-court hearsay statements made by L.R. to Cathleen Iasparro, who interviewed L.R. at a child advocacy center on or about February 3, 2023, and to her mother, Kendra R., on or about January 23, 2023. The State requested a hearing to determine whether L.R.'s hearsay statements could be admitted pursuant to section 115-10(a) of the Procedure Code (*id.* § 115-10(a)).

¶ 8 After a hearing on April 29, 2024, the juvenile court granted the State's motion to allow L.R.'s hearsay statements.

¶ 9 On June 17, 2024, respondent's trial on the amended petition for adjudication of wardship was held. Iasparro, an intake coordinator at Carrie Lynn Children's Center, which is a child advocacy center in Rockford, Illinois, testified she conducted an interview with L.R. on February 3, 2023. Iasparro indicated L.R.'s demeanor changed during the interview when she was asked about the charged offenses. A recording of the interview was admitted into evidence over respondent's hearsay objection.

¶ 10 Kendra R., L.R.'s mother, testified she knew respondent through her son. Respondent had been at her house at least four times. The last time was on October 29, 2022, when respondent spent the night. Kendra's son and respondent played video games in her son's bedroom

- 3 -

and sports outdoors during sleepovers. Kendra did not remember anything unusual happening when respondent stayed over on October 28 and 29, 2022.

¶ 11 According to Kendra, L.R. would try to spend time with the boys during these sleepovers. L.R.'s bedroom was across the hall from her brother's bedroom.

¶ 12 Kendra testified she first learned about the accusations in this case on January 26, 2023, through the mother of one of L.R.'s friends. She left work and went home to talk to her daughter. L.R. told Kendra that respondent came to her bedroom when everyone was sleeping, rubbed on her bottom, rubbed on her private parts over her underwear, exposed himself to her, and asked her to touch him. Kendra testified L.R. was scared during their conversation, was not her normal self, and was reluctant to talk about what happened.

¶ 13 On cross-examination, Kendra said her and her husband's bedroom is across the hall from L.R.'s bedroom and adjacent to her son's bedroom. She did not notice L.R. exhibiting any strange behavior the weekend the charged offenses allegedly occurred.

¶ 14 L.R. also testified. She was nine years old at that time. She indicated she remembered talking to someone named Cathleen in Rockford about what happened. According to L.R., the alleged conduct occurred in the fall, and it was hard for her to remember the bad things that happened. L.R. said she did not want to talk about what happened.

¶ 15 However, L.R. did testify she was wearing shorts and a shirt when she went to bed on the night in question around 8 p.m. Before she fell asleep, her brother's friend, whom she identified as respondent, came into her bedroom. She was in her bed, and her room was dark. Respondent asked if he could lie down with her. After she did not respond, he laid down behind her. L.R. testified respondent's front was facing her back and she could feel his breath on her back. When asked if she felt other parts of respondent's body on her body, L.R. stated she felt his hand

- 4 -

on her shoulder or maybe her hip. She also felt his hard "private part," which was moving side to side, on her buttock. According to L.R., she felt weird when this was happening, like "watching a scary movie and your stomach turns." She testified no other part of respondent's body touched her private parts. After respondent left her room, she went to sleep. She did not tell her mother or father what happened because she was scared they would get mad. She eventually told a friend at school.

¶ 16     On cross-examination, L.R. admitted her brother sometimes kicked her out of his room when he had friends at their house, which made her mad. L.R. also stated she kept her bedroom door cracked open at night.

¶ 17     Special Victims Detective Claire Girot, formerly Claire Gann, of the Freeport Police Department identified respondent in the courtroom. She testified she interviewed respondent on June 5, 2023, at the police department with his mother present. Respondent told her he was 15 years old and knew L.R.'s family through L.R.'s brother, with whom respondent was friends. According to Detective Girot, respondent was fairly calm at the beginning of the interview. However, when she asked respondent if his DNA would be found on or around L.R.'s vagina or bedding, respondent became more nervous. The State offered into evidence a recording of respondent's interview as State's exhibit No. 2. The juvenile court admitted the exhibit without objection. When asked why L.R. might falsely accuse respondent, he said he did not know. When asked again, he said she may have been mad because she was not allowed to play video games with him and L.R.'s brother.

¶ 18     On cross-examination, Detective Girot testified respondent denied any sexual assault occurred.

¶ 19 After the State rested, respondent testified on his own behalf. He said he was 16 years old and going into his junior year of high school. He had been friends with L.R.'s brother, T.R., for five or six years and had spent the night at T.R.'s house on October 28 and 29. They played video games in T.R.'s room all weekend and went outside when they were bored. He thought he spent both Friday and Saturday night at T.R.'s house that weekend. On one of the two nights, T.R. fell asleep first, and respondent took over the game and played until around 1 a.m. T.R.'s father checked on him about every 30 to 60 minutes.

¶ 20 When asked about L.R., respondent said she tried to hang around him and T.R., but they did not let her because she was annoying. He denied ever being alone with her. Respondent claimed the only time he left T.R.'s room at night was to go to the bathroom.

¶ 21 The defense rested after respondent's testimony. After the State and defense presented their closing arguments, the juvenile court indicated it would take the matter under advisement.

¶ 22 On August 26, 2024, the juvenile court found respondent guilty on all the charges and declared him to be a delinquent minor.

¶ 23 On September 9, 2024, respondent filed a motion for a new trial.

¶ 24 At a hearing on December 16, 2024, the juvenile court denied respondent's motion for a new trial. The court then proceeded to sentencing, noting it was in receipt of the social investigation, which included respondent's social history, his sexual evaluation dated October 27, 2024, and his school and medical records. The State did not ask the court to consider anything else in aggravation and presented no victim statements. Defense counsel pointed to respondent's social history in mitigation.

¶ 25 The State argued respondent had a difficult time identifying his problem behaviors,

continued to deny committing the charged offenses, and had been diagnosed with attention-deficit/ hyperactivity disorder and autism. Further, respondent did not display age-appropriate problem solving or social skills, regularly displayed impulsive behaviors, historically had problems at school, and failed to attend mental health therapy appointments, resulting in his discharge from treatment. Respondent indicated he currently viewed pornography once every few weeks. He also incorrectly believed the age of consent in Illinois was 14. Respondent was diagnosed with major depressive disorder, moderate. The State argued he needed specialized sex offender treatment. In addition, the State indicated it was very concerned about respondent's impulse control issues. After presenting its arguments, the State requested respondent be given two years' probation and required to undergo sex offender, mental health, and behavioral treatment. The State also asked that respondent be required to have no contact with the victim and no unsupervised contact with any minors.

¶ 26     Respondent maintained his innocence and asked for a shorter term of probation. While disagreeing with the need for sex offender treatment, defense counsel noted respondent might benefit from mental health treatment. Defense counsel also asked for no restrictions with regard to respondent's eight-year-old sibling.

¶ 27     The juvenile court then formally adjudicated respondent a ward of the court, finding it was in respondent's best interests to do so, and sentenced him to two years' probation. In addition, the court ordered respondent would be subject to the standard terms and conditions of probation and ordered mental health and sex offender treatment. The court also stated:

> "Additional conditions that I'm going to put on here. Obviously, no contact with the minor, L.R. I don't think that surprises anybody here. No contact with the minor, L.R. In regards to the unsupervised, I am going to carve out the sibling. I

am going to say no unsupervised contact with any other minors, outside of the minor's sibling on there. *** I believe there's adequate parameters in the home environment in regards to there so I'm *** going to make it like that."

The court also ordered respondent to submit to felony DNA testing and, if provided by probation, a program the court called "Thinking for a Change" or its equivalent. The court also told respondent:

"I'm going to agree with the parties, but I'm not going to sentence you to any detention time today. I'm certainly not sentencing you to the Department of Juvenile Justice. Again, it's a serious offense, but I do think the appropriate emphasis on here is under the probated sentence and under the treatment provisions.

I do want to be very clear with you *** though, if you violate the terms of that, you're looking, again, at either juvenile detention locally, could be up to 30 days or a commitment to the Department of Juvenile Justice, which could, on a Class 2 felony, be up to your 21st birthday on here. I don't say that as a, you know, prejudging how your probation is going to go, but I got you here in front of me today and I just want to be very clear with you on it. I'm not sentencing you to jail today, I'm sentencing you to a lot of other terms, but if you violate the terms of your probation, we very much are looking at some of those times in custody. Okay?

In addition, I think it's in the standard terms and conditions, but obviously, attend school, maintain passing grades on there."

When the court asked if the sentencing order needed to be clarified, both attorneys said no.

¶ 28        The juvenile court then advised respondent he had the right to appeal. In addition, the court told respondent he would need to file a motion to reconsider his sentence prior to filing

his notice of appeal if he wanted to challenge his sentence on appeal. On January 2, 2025, respondent filed his notice of appeal. On January 8, 2025, the Office of the State Appellate Defender filed an amended notice of appeal on his behalf.

¶ 29          This appeal followed.

¶ 30                              II. ANALYSIS

¶ 31                    A. Conditions of Respondent's Probation

¶ 32          Respondent first argues the juvenile court erred in prohibiting him from having unsupervised contact with minors not related to him as a condition of his probation. According to respondent, this is an unreasonable "no contact" condition because it allows for no exceptions for legitimate purposes. The State contends the juvenile court did not err by imposing this condition. According to the State, the condition is reasonable because it advances the goal of respondent's rehabilitation, has a clear connection to the specific crimes respondent committed, and protects vulnerable minors.

¶ 33          Respondent recognizes he forfeited this argument by failing to raise the issue in the trial court (*People v. Hammons*, 2018 IL App (4th) 160385, ¶ 14) but asks this court to excuse his forfeiture pursuant to the second prong of the plain-error doctrine. He also argues his attorney in the juvenile court was ineffective for failing to challenge the juvenile court's imposition of this condition.

¶ 34          Section 5-715(2) of the Juvenile Act (705 ILCS 405/5-715(2) (West 2022)) specifically enumerates certain probation conditions a juvenile court may impose. A juvenile court may also impose additional conditions not specifically identified "to achieve the goals of fostering rehabilitation and protecting the public." *In re J.W.*, 204 Ill. 2d 50, 77 (2003). "Even fundamental constitutional rights are not absolute and may be reasonably restricted in the public interest." *Id.*

at 78. However, a court's latitude in imposing probation conditions is not limitless. *In re Omar F.*, 2017 IL App (1st) 171073, ¶ 55.

¶ 35 A reviewing court's overriding concern in considering the propriety of a condition of probation is reasonableness. *J.W.*, 204 Ill. 2d at 78. For a condition to be reasonable, it "must not be overly broad when viewed in the light of the desired goal or the means to that end." *Id.* When a condition requires the individual on probation to forgo important constitutional rights, the condition must be narrowly drawn. *Id.* To the extent a condition is overbroad, it "is not reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights." (Internal quotation marks omitted.) *Id.* at 78-79.

¶ 36 Respondent acknowledges the juvenile court had a legitimate goal of protecting the public. However, according to respondent, the juvenile court made a clear or obvious error by imposing a blanket prohibition on him having unsupervised contact with all unrelated minors. Respondent argues the condition was overly broad, as it failed to draw any meaningful distinction between minors who needed to be protected from respondent and those who did not. For example, respondent essentially concedes the juvenile court could justifiably restrict his contact with unrelated preteen females, like his victim. However, respondent contends teenage minors, like those with whom he would be attending high school, did not need to be protected from him. In addition, respondent contends the blanket prohibition against him having unsupervised contact with any unrelated minor inhibits his rehabilitation because it restricts his ability to go to school and have normal relationships with his peers.

¶ 37 According to respondent, his trial counsel was ineffective for not arguing the "no contact" condition imposed by the trial court is unreasonable. To succeed on an ineffective

assistance of counsel claim, a defendant must show two things: (1) his counsel's representation fell below an objective standard of reasonableness and (2) he was prejudiced by the ineffective representation because a reasonable probability exists the result of the proceedings would have been different absent the deficient representation. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *People v. Lawton*, 212 Ill. 2d 285, 302 (2004). A " 'reasonable probability' " is " 'a probability sufficient to undermine confidence in the outcome' " of the proceeding. *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694).

¶ 38        Respondent argues his attorney's representation fell below an objective standard of reasonableness in this case because he failed to recognize the probation condition at issue is not reasonable and failed to challenge the condition. In addition, respondent argues the result of the proceedings would have been different had his attorney challenged the probation condition because it is likely the juvenile court would have recognized the probation condition is not reasonable and modified the condition. If not, the juvenile court's error in imposing the condition would have been preserved for this court's review.

¶ 39        However, once again, the State contends respondent was not prejudiced by his attorney's failure to challenge the condition because the challenge would have been futile considering the condition is reasonable, it does not violate respondent's constitutional rights, and it was not an error for the court to impose the condition on respondent. According to the State, even if respondent's counsel had challenged the condition, nothing in the record indicates the juvenile court would have modified it.

¶ 40        We disagree with the State's assessment of the situation. Respondent's attorney in the juvenile court should have recognized several problems with a probation condition that restricts respondent from having unsupervised contact with any unrelated minor. First, respondent's victim

in this case was only eight years old. However, the probation condition at issue is not narrowly drawn, as it prohibits respondent from having unsupervised *contact* with anyone under 18 years of age. Second, respondent was a minor and ordered to attend high school, where he would be surrounded by minors. Third, the order failed to define what constituted supervision. The order neither indicated that respondent was considered supervised merely by being present at school nor required that a specific supervising adult was to be with respondent at all times. Under a strict reading of the "no contact" condition of his probation, respondent would be in violation of the condition if he was in an unsupervised hallway or classroom at the school and had contact with another minor student who was also present in the classroom or hallway, even if respondent did not instigate the contact.

¶ 41        As will be discussed, appellate decisions have distinguished "no contact" provisions from prohibitions against associating with certain individuals. Admittedly, while respondent likely would be supervised in some manner during a significant portion of his time at school by teachers or other school staff, it would likely be beyond his control and virtually impossible, even if he did his best to comply with the court's probation conditions, for him not to have unsupervised contact with minors before school, at various times during the school day, and after school. While it might make sense and be reasonable to place a blanket prohibition on an adult sex offender with no reason to have contact with any minor to have no unsupervised contact, it is not inherently reasonable to place such a blanket "no contact" restriction on a minor who had a prepubescent female victim and is required to attend high school pursuant to another condition of his probation.

¶ 42        Both parties and the juvenile court should have been aware that it would be virtually impossible for respondent to both attend high school and not have unsupervised contact with

another minor. When respondent was sentenced in December 2024, appellate court opinions had been published indicating a probation condition that was virtually impossible to follow was not a reasonable condition.

¶ 43        In both *Omar F.*, 2017 IL App (1st) 171073, ¶¶ 31-32, 51, and *In re K.M.*, 2018 IL App (1st) 172349, ¶ 1, the juvenile courts imposed a probation condition that the respondent in each case have no gang contact or gang activity. The respondent in each case failed to challenge the condition in the juvenile court, and the respondent in each case asked the appellate court to consider, pursuant to the plain-error doctrine, whether the juvenile court erred by imposing the condition.

¶ 44        In *Omar F.*, 2017 IL App (1st) 171073, ¶ 61, the First District concluded the "no-gang contact" provision was reasonably related to the respondent's rehabilitation and, therefore, valid. However, the First District also determined the condition was unreasonable because it was "overbroad and not narrowly drawn." *Id.* ¶ 60. The appellate court explained:

> "The trial court's blanket order requiring the respondent to 'stay away' from and have 'no contact' with gangs *** did not contain a means by which the respondent could obtain an exception from the restrictions for legitimate purposes. There is no exclusion for people based on familial, employment, or educational relationships, and no explanation as to what type of contact ***, no matter how innocuous, will result in a probation violation. This is particularly troubling where, according to the social investigation report, the respondent reported that the person he looks up to the most is his brother, who 'has been in the system but has turned his life around.' Accordingly, we find that in the present case, the trial court's imposition of the aforementioned gang-related conditions of probation constituted error." *Id.* ¶ 63.

- 13 -

After determining the imposition of the condition was a clear or obvious error, the First District next found it could review the issue under both prongs of the plain-error doctrine. *Id.* ¶¶ 67-68. As for its determination regarding second-prong plain error, the court held the error affected the integrity of the judicial process, explaining:

> "The judicial process of permitting social rehabilitation as a condition of probation depends on evidence of the need for such social rehabilitation but also clear parameters in setting out how the rehabilitation is to proceed. Given that certain areas of Chicago are gang-infested, a blanket prohibition against contact with gangs is simply too general and overbroad to provide a juvenile with clear parameters about how to comply with the conditions of his probation. That is, if the parameters are so vague, overboard [*sic*], or general that a juvenile could be inadvertently caught violating probation in a number of scenarios, including when conducting himself in a constitutionally protected manner, then the judicial process is not functioning as intended." *Id.* ¶ 68.

The First District vacated the provision requiring the respondent to have no contact with gangs and remanded the cause. *Id.* ¶ 69.

¶ 45    Shortly thereafter, in *K.M.*, 2018 IL App (1st) 172349, ¶¶ 40-41, the First District again found that a probation condition prohibiting the respondent from having contact with gangs was overbroad, unconstitutional, and constituted second-prong plain error. The First District noted that a probation condition that burdens a juvenile's ability to exercise fundamental constitutional rights must be reasonably related to the State's interest in rehabilitation and reformation. *Id.* ¶ 22.

¶ 46    According to the First District in *K.M.*, "a blanket no-gang-contact condition prohibits the kind of innocent, incidental contact with gang members that respondent, living in a

gang-infested neighborhood, is likely (if not certain) to have during the course of his ordinary daily activities." *Id.* ¶ 26. The court also stated it would "not indulge the fantasy that respondent, despite living in a neighborhood unfortunately blighted by gangs, drugs, and violent crime, may somehow manage to cut a path through life that simply avoids contact with any gang members." *Id.* ¶ 28. The First District noted this condition of the respondent's probation "is, for all practical purposes, impossible for him to obey." *Id.*

¶ 47     The State in *K.M.* argued the "no-contact with gangs" condition did not include innocent or incidental contact within its scope. *Id.* ¶ 30. According to the State, " 'contact' requires an effort to forge an abiding association with another—in this case, a gang and the gang's criminal activities and purposes." *Id.* The First District disagreed, stating, "Any competent speaker of English would say that two people who have had a conversation—at the bus stop, on the school lunch line, or anywhere else—have had contact with each other." *Id.* ¶ 31. In addition, citing *Arciniega v. Freeman*, 404 U.S. 4 (1971) (*per curiam*), the court noted, contrary to the State's argument, that it is not outside the realm of possibility for a person on probation to be violated for " 'engaging in innocent conduct.' " *K.M.*, 2018 IL App (1st) 172349, ¶¶ 33-35. According to the court, even though most juvenile court judges and probation officers act reasonably most of the time, it is not guaranteed to happen in every instance. *Id.* ¶ 33.

¶ 48     As for the State's argument in *K.M.* that the respondent could have asked "his probation officer for advance approval of certain innocuous 'contacts' in which he expects to engage in his daily life," the First District stated:

> "We would certainly encourage respondents in such a situation to do so. Maybe had respondent done so here, his probation officer would have put him at ease on this question. But maybe not. We cannot assume so, as the example in *Arciniega*,

- 15 -

404 U.S. at 4, makes clear. Nor can we assume that a 17-year-old special education student would have the wherewithal to fully protect his rights in this regard. After all, his trial attorney apparently saw no problem with the court's probation condition, which is why the issue was forfeited, requiring plain-error review on appeal. And juveniles on probation are not typically accompanied by counsel when they meet with their probation officers. In any event, it is putting a lot on a juvenile to expect him to compile a comprehensive list of all possible scenarios in which he might unintentionally violate the probation condition, present them to the probation officer, and receive a satisfactory resolution of the problem in advance." *Id.* ¶ 37.

The First District went on to cite *United States v. Stevens*, 559 U.S. 460, 480 (2010), for the proposition "[a]n unconstitutionally broad provision cannot be upheld based on the prosecution's assurances that it will be applied with circumspection, so that the constitutional violations it authorizes will never, as a practical matter, come to pass." *K.M.*, 2018 IL App (1st) 172349, ¶ 38.

¶ 49     The First District in *K.M.* agreed with *Omar F.*'s conclusion that the juvenile court's error in imposing the "no-gang contact" condition on K.M. was reviewable as second-prong plain error. *Id.* ¶ 41. According to the appellate court in *K.M.*:

"The error in the no-gang-contact condition is both clear and serious enough to warrant reversal under the plain-error rule. As we have explained, this condition, left as it is, will leave respondent perpetually walking on eggshells, fearful that at any moment, he might violate his probation, even unknowingly, and even due to circumstances beyond his control. Taking the no-contact order in its ordinary English sense, respondent will be fearful of the daily, productive endeavors that are essential to his rehabilitation, including the activities—like travelling to and

attending school—that the juvenile court required of him as further conditions of his probation." *Id.* ¶ 43.

¶ 50        Based on the facts before this court, we agree with respondent that the juvenile court clearly erred in imposing an unreasonable blanket prohibition on him having unsupervised contact with any unrelated minor. However, we do not find it necessary to determine whether this error rises to the level of second-prong plain error like the First District did in *Omar F.* and *K.M.* Instead, we review and vacate the juvenile court's "no-contact" probation condition because respondent's counsel in the juvenile court was ineffective for not challenging the unreasonable condition.

¶ 51        The victim in this case was eight years old at the time of the offense. Yet, the juvenile court imposed a blanket condition restricting respondent from having unsupervised contact with any unrelated person under 18 years of age. At the same time, the juvenile court required respondent to attend high school, where he would be surrounded by minors and where he would have no ability to control, in certain situations, whether he was supervised or not. Like the practical impossibility of the respondents in *Omar F.* and *K.M.* avoiding gang contact in their gang-infested neighborhoods, it would be practically impossible for respondent in this case to avoid having unsupervised contact with minors at his high school. Quite frankly, the condition would make it difficult for respondent to ever leave his home alone because of the possibility he might have unsupervised contact with a minor. While courts are given much discretion in imposing conditions on individuals who are on probation, a court should not impose conditions that would be practically impossible for a person not to violate or are inherently conflicting. Based on the circumstances in this case and the breadth of this probation condition, the condition is clearly unreasonable.

¶ 52 The State's reliance on this court's decision in *Hammons*, 2018 IL App (4th) 160385, is misplaced. In *Hammons*, the adult defendant entered a negotiated guilty plea to charges of residential burglary and theft. *Id.* ¶ 4. The trial court sentenced the defendant to 8 years in prison for residential burglary, to be followed by 30 months' probation for theft. *Id.* ¶ 5. As conditions of his probation, the defendant was not allowed to *associate* with any individual who had a misdemeanor or felony drug conviction and was to submit to warrantless searches of his person and property by his probation officer. *Id.* ¶ 6. As in this case, the defendant forfeited any objection to these conditions and requested review pursuant to the plain-error doctrine. *Id.* ¶¶ 14, 17.

¶ 53 This court found that forbidding the defendant to *associate* with individuals with drug convictions was not a clear or obvious error, noting individuals—like the defendant—with substance abuse issues, who sometimes commit burglaries and steal to support their drug habit, need to remove themselves from the drug culture to overcome their drug habit. *Id.* ¶ 23. For these same reasons, this court held that requiring the defendant not to *associate* with other individuals convicted of drug offenses did not violate the defendant's constitutional rights. *Id.* ¶¶ 27-28.

¶ 54 In reaching its conclusion, this court distinguished the condition requiring the defendant not to *associate* with any person with a drug conviction from the condition in *Omar F.*, 2017 IL App (1st) 171073, ¶ 61, which prohibited the respondent from having any *contact*, directly or indirectly, with members of street gangs. *Hammons*, 2018 IL App (4th) 160385, ¶ 30. This court noted the condition in *Omar F.* was broader than the condition in *Hammons*. *Id.* ¶ 34.

> "Having contact with someone and associating with someone are not the same
> thing. Direct or indirect contact does not necessarily amount to association. To
> 'associate' means '[t]o join[,] often *** in a loose relationship[,] as a partner, fellow
> worker, colleague, friend, companion[,] or ally.' [Citation.] ' "Association"

generally has been interpreted to mean intentional, knowing[,] and substantial contact, or the development of a significant or meaningful relationship, with a convicted criminal over a substantial period of time.' [Citation.] Contacting someone does not necessarily entail entering into a relationship with that person. See *Arciniega v. Freeman*, 404 U.S. 4, 4 (1971) (*per curiam*) ('[The] petitioner was forbidden to "associate" with other ex-convicts. *** We do not believe that the parole condition restricting association was intended to apply to incidental contacts between ex-convicts in the course of work on a legitimate job for a common employer.'). Also, '[g]iven that certain areas of Chicago [were] gang-infested' (*Omar F.*, 2017 IL App (1st) 171073, ¶ 68), the prohibited class in *Omar F.* (' "members of street gangs" ') was broader than the prohibited class in the present case ('any person who has a misdemeanor or felony drug conviction')." *Id.*

This court noted that the condition in *Hammons* requiring the defendant not to associate with any individual with a drug conviction was not clearly or obviously an unreasonable condition because it was narrower than the condition in *Omar F. Id.* ¶ 35. Therefore, the condition prohibiting the defendant in *Hammons* from associating with people who had a drug conviction was not plain error. *Id.*

¶ 55        Based on our review of *Hammons*, the factual situation in the case *sub judice* is easily distinguishable. First, unlike in *Hammons*, we are dealing with a juvenile respondent and not an adult defendant. Second, the probation condition at issue here is much broader than the condition in *Hammons* and more analogous to the condition in *Omar F.*, which this court in *Hammons* recognized was distinguishable from the situation before it. See *id.* ¶ 34. Here, the probation order does not prohibit respondent from "associating" with any unrelated minors.

Instead, it prohibits respondent from having "unsupervised contact" with any unrelated minors. Finally, unlike the condition at issue in this case, it was not virtually impossible for the defendant in *Hammons* to avoid *associating* with individuals who had a drug conviction.

¶ 56 Based on the facts in this case, it should have been readily apparent to respondent's attorney in the juvenile court that a probation condition prohibiting him from having unsupervised contact with any unrelated minor was not reasonable, especially when he was also being required to attend high school, where he would be surrounded by minors. Respondent's attorney's failure to challenge this condition was objectively unreasonable. Further, a reasonable probability exists that the juvenile court would have modified this unreasonable condition had respondent's attorney explained why it would be inherently conflicting and virtually impossible for respondent to comply with this condition of his probation and attend high school, as the juvenile court also ordered. In the unlikely situation the juvenile court may have denied a challenge to the condition, the juvenile court's error would have been preserved for this court's review, and this court could find the juvenile court erred in imposing the unreasonable condition.

¶ 57 Because respondent established his trial counsel was ineffective for failing to challenge the unreasonable condition of respondent's probation, we vacate the condition prohibiting respondent from having unsupervised contact with any unrelated minor and remand this case to the juvenile court for a revised probation order. We appreciate the difficult task the juvenile court faces in crafting an order that balances the necessary protections for the public with conditions necessary to foster respondent's rehabilitation. Therefore, as the matter is being remanded, we again note the sentencing order provided no definition of what constitutes supervision or who may supervise respondent, especially when he is at school. Moreover, it failed to provide a definition of what constitutes "contact."

¶ 58    In an effort to avoid inherently conflicting probation provisions, the juvenile court may want to consider the manner in which schoolwork must often be completed by high school students. For example, respondent may be required to participate in group projects using Internet applications or programs with chat, e-mail, or text features. The court may want to consider respondent's participation in these activities, any supervision that might be necessary for these activities, and whether such activities would be prohibited by any condition in the probation order.

¶ 59    As already noted, we need not decide whether the juvenile court's error could be reviewed under the second prong of the plain-error doctrine because we concluded counsel was ineffective for failing to challenge the unreasonable condition of respondent's probation.

¶ 60                    B. One-Act, One-Crime Rule

¶ 61    Respondent next argues his battery adjudication must be vacated because it violates the one-act, one-crime rule. Pursuant to the one-act, one-crime rule, a juvenile respondent may not be adjudicated delinquent of more than one offense arising from the same physical act. See *In re Samantha V.*, 234 Ill. 2d 359, 375-76 (2009). According to respondent, his battery adjudication was based on the same acts as his aggravated criminal sexual abuse charges for which he was found guilty. This court applies a *de novo* standard of review when determining whether a respondent was convicted of more than one offense based on the same act. *People v. Cross*, 2019 IL App (1st) 162108, ¶ 147.

¶ 62    While respondent concedes he forfeited this argument by not raising it in the juvenile court, he once again asks this court to review the issue pursuant to the second prong of the plain-error doctrine. As stated earlier, the first step in determining whether an issue can be reviewed under the plain-error doctrine is determining whether the juvenile court made a clear or

obvious error. *Samantha V.*, 234 Ill. 2d at 368. The party seeking plain-error review has the burden of persuasion with regard to whether an error occurred. *Id.*

¶ 63        Courts use a two-step analysis to determine whether a one-act, one-crime violation has occurred. *People v. Coats*, 2018 IL 121926, ¶ 12. First, the court determines whether separately charged offenses were based on a single physical act or separate acts. *Id.* "[A] criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act." *Id.* ¶ 11. Second, if the offenses were based on different physical acts, the court considers "whether any of the offenses are lesser-included offenses." *Id.* ¶ 12. According to respondent's argument on appeal, his battery charge was carved from the same physical acts as his two charges of aggravated criminal sexual abuse. We note respondent did not make a lesser-included offense argument on appeal.

¶ 64        The State's amended petition for adjudication of wardship alleged the charged offenses occurred on or about October 28-29, 2022. One allegation of aggravated criminal sexual abuse charged that respondent committed an act of sexual conduct with L.R. by touching her vagina with his fingers. The second allegation of aggravated criminal sexual abuse charged that respondent committed an act of sexual conduct with L.R. by touching her buttocks with his penis. Finally, the battery allegation charged that respondent "made physical contact of an insulting or provoking nature with L.R. in that he touched her body without her consent in an undesired fashion."

¶ 65        The battery charge did not specify the physical contact constituting that offense was either respondent touching L.R.'s vagina with his fingers or touching L.R.'s buttocks with his penis. At trial, L.R. offered testimony regarding what respondent did in addition to touching her vagina with his fingers and touching her buttock with his penis. According to L.R.'s testimony,

she went to bed before 9 p.m. on the night at issue. Before she went to sleep, respondent knocked on her bedroom door and said, "Hi." L.R. stated she was in her bed, and the room was dark. Respondent asked if he could lie down with her. After she did not respond, respondent laid down behind L.R. on the bed.

¶ 66 L.R. testified the front of respondent's body was facing the back of her body. She stated she could feel his breath on her back and then felt his hand on her shoulder or maybe her hip. She then went on to describe feeling his erect penis, which was moving side to side, touching her buttock. At trial, she did not mention respondent touching her vagina with his fingers. Those allegations were introduced through other evidence.

¶ 67 When the juvenile court announced its findings, it stated it had reviewed the in-court testimony, L.R.'s testimony, and the statements that were introduced pursuant to section 115-10 of the Procedure Code (725 ILCS 5/115-10 (West 2022)). With regard to the battery charge, the court stated: "And the third count alleges that the minor made physical contact of an insulting and provoking nature with L.R., in that he touched her arm about her body without her consent in an undesired fashion." While the battery charge did not explicitly indicate the contact at issue was respondent touching her arm about her body in an insulting and provoking manner, it appears the juvenile court found respondent guilty of battery based on that conduct and not either of the acts for which respondent was found guilty of aggravated criminal sexual abuse.

¶ 68 We recognize the State did not specifically allege what specific act constituted the battery. Further, the State's closing argument did not provide any clarity on what action constituted the battery. However, neither the charging instrument nor the State's closing argument specified the battery charge was based on respondent touching L.R.'s vagina with his fingers or her buttock

with his penis. Further, the trial court did not base its battery finding on either respondent touching L.R.'s vagina with his fingers or touching L.R.'s buttock with his penis.

¶ 69 "[A] defendant can be convicted of two offenses even when they share a common act, as long as there is an additional act that can support a separate offense." *Coats*, 2018 IL 121926, ¶ 26. Respondent provides no real analysis why the juvenile court erred in finding him guilty of battery based on his act of touching L.R.'s "arm about her body" after he had climbed into the then eight-year-old victim's bed. Further, respondent does not attempt to argue the battery was a lesser-included offense of either of his aggravated criminal sexual abuse charges. As a result, respondent failed to establish the trial court made a clear or obvious error by not vacating his battery conviction based on the one-act, one-crime rule, and we need not address this issue further.

¶ 70                                                  III. CONCLUSION

¶ 71 For the reasons stated, we affirm the trial court's guilty findings in this case, vacate the probation condition prohibiting respondent from having unsupervised contact with any unrelated minor, and remand the matter to the juvenile court for entry of a revised probation order. Pursuant to Illinois Supreme Court Rule 660A (eff. July 1, 2018), the deadline for this court to file its decision in this case was June 1, 2025. However, Rule 660A(f) provides this court with the ability to extend the deadline for good cause. Ill. S. Ct. R. 660A(f) (eff. July 1, 2018). We have done so in this case.

¶ 72 Affirmed in part and vacated in part; cause remanded with directions.

**In re D.J.**, 2025 IL App (4th) 250004

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Stephenson County, No. 23-JD-78; the Hon. Peter McClanathan, Judge, presiding. |

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Sarah G. Lucey, of State Appellate Defender's Office, of Springfield, for appellant. |

| | |
|---|---|
| **Attorneys for Appellee:** | Carl H. Larson, State's Attorney, of Freeport (Patrick Delfino, David J. Robinson, and Courtney M. O'Connor, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |